MARK NIELSEN ET AL. *v.* PAULINE R. KEZER,
SECRETARY OF THE STATE, ET AL.
(15032)

BORDEN, BERDON, NORCOTT, KATZ and PALMER, Js.

Argued September 29, 1994—decision released January 31, 1995

*John C. Yavis, Jr.*, with whom was *Gale K. Busemeyer*, for the appellants (plaintiffs).

*Gregory T. D'Auria*, assistant attorney general, with whom were *Henry S. Cohn*, assistant attorney general, and, on the brief, *Richard Blumenthal*, attorney general, for the appellee (named defendant).

*Lawrence J. Halloran*, for the appellee (defendant A Connecticut Party).

PALMER, J. The issue raised by this appeal is whether the defendants, Pauline R. Kezer, the secretary of the state, and the A Connecticut Party (ACP), unlawfully failed to recognize the named plaintiff, Mark Nielsen, a candidate for the state senate in the November 8, 1994 general election, as the ACP's endorsed candidate from the twenty-fourth senatorial district. Nielsen and the plaintiff Charles Hamad, the sole delegate at the ACP's twenty-fourth senatorial district convention, brought this action after Kezer refused to certify Nielsen as the ACP's endorsed candidate based upon the ACP's determination that Hamad's purported endorsement of Nielsen was invalid. The plaintiffs, claiming that the defendants' actions violated their rights under the federal constitution and state election laws, sought an order of mandamus against Kezer and, in the alternative, an injunction against the ACP, directing them to recognize Nielsen as the endorsed candidate of the ACP.

The trial court denied the relief requested by the plaintiffs and rendered judgment for the defendants. The plaintiffs appealed from the judgment of the trial court to the Appellate Court and, on the motion of the plaintiffs, we transferred the appeal to this court pursuant to General Statutes § 51-199 (c) and Practice Book § 4024.[1] We affirm the judgment of the trial court.[2]

The record reveals the following facts. On July 23, 1994, the ACP held a convention for the purpose of endorsing a state senate candidate from the twenty-fourth senatorial district. Under ACP rules adopted pursuant to General Statutes § 9-382,[3] each of the three towns located in that district, namely, Bethel, New Fairfield and Danbury, was entitled to select one delegate to the convention, plus one additional delegate for every ten enrolled party members in the town.[4] Because

[1] The trial court rendered judgment on September 8, 1994, and the plaintiffs filed their appeal the next day. We granted the plaintiffs' motion to transfer the appeal to this court on September 12, 1994. In recognition of the necessity of a prompt determination of this appeal, we granted the plaintiffs' request for an expedited briefing and argument schedule.

[2] We announced from the bench our affirmance of the judgment of the trial court after oral argument on September 29, 1994, noting that this opinion would follow.

[3] General Statutes § 9-382 provides: "PARTY-ENDORSED CANDIDATES; STATE OR DISTRICT OFFICE. The state or district convention, as the case may be, shall, in a manner conforming with applicable law and with the rules of the party calling such convention, choose a candidate for nomination to each of the state or district offices, as the case may be. No such convention shall choose more than one candidate for nomination to any such office. Candidates so chosen shall run in the primary of such party as party-endorsed candidates, except as provided in section 9-416."

[4] Article IV, § 2 (c), of the State Rules of A Connecticut Party provides: "TOWN ALLOCATION OF DELEGATES

"To any district convention to which a town is entitled to elect one or more delegates, such town shall elect that same number of delegates as state convention delegates to which it is entitled, plus one additional delegate for every ten (10) enrolled party members in such town. For purposes of this section, party enrollment in each town shall be determined by the Executive Committee on or before the date of its March meeting."

Hamad was the only ACP member in the twenty-fourth senatorial district to file the petition necessary to become a convention delegate, however;[5] see General Statutes § 9-407;[6] he was the convention's sole delegate, as well as its chairperson.[7]

Two candidates for the state senate from the twenty-fourth district sought the recommendation of the ACP's executive committee: Nielsen, the nominee of the Republican Party and the Independent Party, and Christopher Setaro, the nominee of the Democratic Party.[8] The executive committee recommended Setaro,

---

[5] Despite the fact that ACP had achieved "major party" status by virtue of the fact that its 1990 candidate for governor had received over 20 percent of the vote; see General Statutes § 9-372 (5); the party had less than 2000 members statewide. Only five ACP members resided in the twenty-fourth senatorial district: two in Bethel, three in Danbury, and none in New Fairfield. Hamad resided in Bethel.

[6] General Statutes § 9-407 provides: "Within the time specified in section 9-405, candidacies for nomination by a political party for election as delegates to a convention may be filed by or on behalf of a slate of persons, each of whose names appears upon the last-completed enrolment list of such party within the municipality or within the political subdivision or senatorial district or assembly district or part of a town which is a component part of a senatorial or assembly district composed of parts of two towns or of a town or towns and a part or parts of another town or towns within which delegates are to be selected, as the case may be, by filing with the registrar a petition signed by at least five per cent of the electors whose names appear upon the last-completed enrolment list of such party in such municipality or in such political subdivision or senatorial district or assembly district or part of a town, or signed by such lesser number of such electors as such party may by its rules prescribe, as the case may be. For the purpose of computing five per cent of the last-completed enrolment list, the registrar shall use the last printed enrolment list and the printed supplementary list, if any, of a political party certified and last completed by the registrars of voters, excluding therefrom the names of individuals who have ceased to be electors."

[7] The ACP rules permit single delegate conventions in such circumstances.

[8] Due in part to its small size, the ACP often chose to cross-endorse candidates who had been endorsed by other parties. Although both Nielsen and Setaro were already assured of appearing on the November 8, 1994 ballot because they had received the endorsement of at least one other party, candidates endorsed by the ACP were entitled to the top line of the ballot by virtue of the election of the ACP's 1990 gubernatorial candidate, Lowell P. Weicker, Jr.

whose nomination, under ACP rules, was thereby considered duly made and seconded upon the convening of the convention.[9] At the convention, however, Hamad nominated Nielsen, and purported to endorse him. Thereafter, Hamad and Nielsen filed a certificate of party endorsement with the secretary of the state in accordance with General Statutes § 9-388.[10]

On July 29, 1994, Setaro submitted his formal protest of Hamad's purported endorsement of Nielsen to the ACP executive committee. Specifically, Setaro

[9] Article I, § 5 (e), of the State Rules of A Connecticut Party provides: "CANDIDATE RECOMMENDATIONS

"The Executive Committee may submit to [nominating] conventions [for state and district offices] the nomination(s) of qualified candidates for said offices, which nominations shall be considered duly made and seconded upon the convening of such conventions. In submitting such nomination(s), the Executive Committee shall certify to the convention chairman that the candidate(s) so nominated have consented thereto. Notwithstanding any other provision of these rules or provisions of any by-laws or rules of procedure adopted by the Executive Committee, nominations submitted to conventions pursuant to this section shall be approved by five (5) Executive Committee members, which approval may be obtained in writing."

[10] General Statutes § 9-388 provides: "REPORT TO SECRETARY OF THE STATE. Whenever a convention of a political party is held for the endorsement of candidates for nomination to state or district office, each candidate endorsed at such convention shall file with the secretary of the state a certificate, signed by him, stating that he was endorsed by such convention, his name as he authorizes it to appear on the ballot, his full residence address and the title and district, if applicable, of the office for which he was endorsed. Such certificate shall be attested by either (1) the chairman or presiding officer or (2) the secretary of such convention and shall be received by the secretary of the state not later than four o'clock p.m. on the fourteenth day after the close of such convention. If a certificate of a party's endorsement for a particular state or district office is not received by the secretary of the state by such time, such party, for purposes of section 9-416 and section 9-416a shall be deemed to have made no endorsement of any candidate for such office. If applicable, the chairman of a party's state convention shall, forthwith upon the close of such convention, file with the secretary of the state the names and full residence addresses of persons selected by such convention as the nominees of such party for electors of president and vice-president of the United States in accordance with the provisions of section 9-175."

claimed that the endorsement was invalid because Nielsen's nomination had not received a second as required by ACP rules.

In accordance with General Statutes § 9-387[11] and ACP rules,[12] the executive committee met on August 2, 1994, to resolve the dispute concerning Hamad's purported endorsement of Nielsen. By unanimous vote, the committee sustained Setaro's challenge and declared the purported endorsement of Nielsen invalid on the ground that it had not been seconded in accordance with the rules of the party. Accordingly, by letter dated August 2, 1994, Diane S. Blick, the ACP state chairperson, notified Kezer that the ACP "made no endorsement for the office of State Senator in the twenty-fourth Senatorial District." Kezer thereupon informed Nielsen that, in view of the ACP's resolution of the dispute, his name would not appear on the ballot as the ACP's endorsed candidate.[13]

The plaintiffs then commenced this action, alleging that Nielsen had been unlawfully deprived of his right to appear on the ballot as the ACP's endorsed candidate, and that Hamad had been improperly denied his right as a convention delegate to endorse the candidate of his choice. The plaintiffs sought an order of man-

[11] General Statutes § 9-387 provides: "DISPUTE AS TO ENDORSEMENT. The state rules of each party shall prescribe the manner in which any dispute as to the endorsement by such party of a candidate for state, district or municipal office or for delegate or town committee member, including conflicting claims to such endorsement, shall be resolved."

[12] Article VI, § 2, of the State Rules of A Connecticut Party provides: "DISPUTES

"Any dispute as to the endorsement of candidates for elective office, or as to the election of candidates to party office, or any dispute of a political nature, shall be presented to the Executive Committee in writing. After such investigation and hearing as it may deem necessary, the Executive Committee shall vote to resolve the dispute."

[13] Kezer's letter to Nielsen stated that her office was "not permitted to place [Nielsen's] name on the ballot" in light of the ACP's resolution of the dispute in accordance with § 9-387.

damus compelling Kezer to place Nielsen's name on the ballot as the ACP candidate and, in the alternative, an injunction directing the ACP to withdraw its August 2, 1994 letter to Kezer informing her that the party had not endorsed a candidate from the twenty-fourth senatorial district. The ACP filed a motion to dismiss the plaintiffs' claims on the ground that the court lacked jurisdiction over the subject matter of the complaint because the issues raised therein were nonjusticiable political questions. After a hearing, the trial court denied the ACP's motion to dismiss, but rendered judgment for the defendants, concluding that their refusal to recognize Nielsen as the ACP endorsed candidate did not violate the plaintiffs' rights. This appeal followed.

On appeal, the plaintiffs claim that: (1) Kezer improperly deferred to the ACP's incorrect resolution of the dispute; (2) the defendants' refusal to recognize Nielsen as the ACP endorsed candidate violated General Statutes §§ 9-390 and 9-407,[14] which provide for the

---

[14] General Statutes § 9-390 provides: "SELECTION OF PARTY-ENDORSED CANDIDATES. (a) Except as provided in subsection (g) of this section, party-endorsed candidates of any party in any municipality for municipal office shall be selected, in accordance with the rules of such party, by: (1) The enrolled members of such party in such municipality in caucus, (2) delegates to a convention chosen in accordance with such rules by such enrolled members or (3) the town committee of such party. The town chairman or his designee shall give notice in a newspaper having a general circulation in the town of the date, time, location and purpose of a caucus held pursuant to subdivision (1) of this subsection. Such notice shall be given not less than five days prior to the date set for the caucus; provided, if the rules of the party in any municipality require earlier notice, such party rules shall prevail.

"(b) Except as provided in subsection (g) of this section, party-endorsed candidates of any party in any municipality for delegates to conventions shall be selected, in accordance with the rules of such party, by the method prescribed in either subdivision (1) or (3) of subsection (a) of this section.

"(c) Except as provided in subsection (g) of this section, party-endorsed candidates of any party in any municipality for town committee members shall be selected, in accordance with the rules of such party, by the method prescribed in subdivision (1) of subsection (a) of this section.

selection of candidates by local delegates; and (3) the defendants' actions deprived Hamad of his federal constitutional right to vote for the candidate of his choice. ACP contends that the trial court did not have subject matter jurisdiction over the plaintiffs' claims and, accordingly, that the court should have dismissed the plaintiffs' action.[15] We agree with the conclusion of the

"(d) The selection of party-endorsed candidates in the manner provided in subsection (a), (b) or (c) of this section shall be made and certified to the clerk of the municipality within the time specified in section 9-391.

"(e) In the endorsement of any person for an office or a position as delegate or committee member, in the manner provided in subsection (a), (b) or (c) of this section, for whom only the electors of a political subdivision of such municipality or of a senatorial district or assembly district located in such municipality may vote, only the enrolled party members, delegates or town committee members, as the case may be, from such political subdivision or district may participate, except that, in a municipality in which the town committee is elected at large and is the endorsing authority, such endorsement shall be made by the town committee as a whole and except that, whenever no member of the endorsing authority resides in such political subdivision or district from which the endorsement is to be made, then such endorsing authority as a whole shall endorse.

"(f) Candidates endorsed in the manner provided in subsection (a), (b) or (c) of this section shall run in the primary of such party as party-endorsed candidates, except as provided in section 9-417.

"(g) Any party in any municipality may by its rules provide that no selection be made of party-endorsed candidates for municipal office, town committee members or delegates to conventions and that the nominees of such party for such municipal office, town committee members or delegates to conventions of such party be chosen at direct primaries in accordance with the provisions of sections 9-405 to 9-407, inclusive, and sections 9-409 to 9-412, inclusive, except as provided in sections 9-418, 9-419 and 9-420.

"(h) This section shall not apply to district delegates to conventions." See footnote 6 for the text of General Statutes § 9-407.

[15] We note that the defendants failed to raise this claim on cross appeal within ten days of the filing of the plaintiffs' appeal as required by Practice Book § 4005. The defendants, however, raised the jurisdictional issue in the trial court, and also in their appeal briefs, which, because of the expedited briefing schedule, were filed fourteen days from the filing of the plaintiffs' appeal. Moreover, the plaintiffs, who did not object to the defendants' failure to raise the issue on cross appeal, could have addressed the defendants' jurisdictional claim in their reply brief to this court, but chose not to do so. Because the plaintiffs can claim neither surprise nor prejudice by our review of the issue; see, e.g., *DeBeradinis* v. *Zoning Commis-*

trial court that although it had subject matter jurisdiction to decide the plaintiffs' claims, the plaintiffs failed to demonstrate that the defendants' actions violated their rights under either the United States constitution or the state election laws. Accordingly, we affirm the judgment of the trial court.

I

We first consider the defendants' contention that the trial court should have dismissed the plaintiffs' action because it did not have jurisdiction over the subject matter of the plaintiffs' claims. Specifically, the defendants contend that the plaintiffs' claims are nonjusticiable because they raise political questions the resolution of which is beyond the court's authority. We disagree.

It is well settled that certain political questions cannot be resolved by judicial authority without violating the constitutional principle of separation of powers. *Baker* v. *Carr*, 369 U.S. 186, 210, 217, 82 S. Ct. 691, 7 L. Ed. 2d 663 (1962); *Fonfara* v. *Reapportionment Commission*, 222 Conn. 166, 184–85, 610 A.2d 153 (1992); *Pellegrino* v. *O'Neill*, 193 Conn. 670, 679–80, 480 A.2d 476, cert. denied, 469 U.S. 875, 105 S. Ct. 236, 83 L. Ed. 2d 176 (1984). As we have stated, the "characterization of such issues as political is a convenient shorthand for declaring that some other branch of government has constitutional authority over the subject matter superior to that of the courts." *Pellegrino* v. *O'Neill*, supra, 680. The fundamental characteristic of a political question, therefore, is that its adjudication would place the court in conflict with a coequal branch of government in violation of the primary authority of that coordinate branch. *Baker* v. *Carr*, supra, 217. Whether a controversy so directly implicates the pri-

*sion*, 228 Conn. 187, 198 n.7, 635 A.2d 1220 (1994); and in view of the fact that the defendants challenge the trial court's exercise of jurisdiction over the plaintiffs' action, we shall consider the defendants' claim on its merits.

mary authority of the legislative or executive branch, such that a court is not the proper forum for its resolution, is a determination that must be made on a case-by-case inquiry. Id., 210–11.

In deciding whether an action is nonjusticiable under the political question doctrine, we are to be guided by "several formulations which vary slightly according to the settings in which the [question] arise[s] . . . . Prominent on the surface of any case held to involve a political question is found a textually demonstrable constitutional commitment of the issue to a coordinate political department; or a lack of judicially discoverable and manageable standards for resolving it; or the impossibility of deciding without an initial policy determination of a kind clearly for nonjudicial discretion; or the impossibility of a court's undertaking independent resolution without expressing lack of the respect due coordinate branches of government; or an unusual need for unquestioning adherence to a political decision already made; or the potentiality of embarrassment from multifarious pronouncements by various departments on one question. Unless one of these formulations is inextricable from the case at bar, there should be no dismissal for nonjusticiability on the ground of a political question's presence." Id., 217.

We begin our analysis of the defendants' jurisdictional claim with the observation that the defendants do not contend that the executive or legislative branch had authority to resolve the plaintiffs' claims superior to that of the judicial branch. Rather, they argue that the trial court should have declined to adjudicate the plaintiffs' action in deference to the alleged decision-making autonomy of the ACP, a political party. Thus, the defendants have failed to demonstrate that the plaintiffs' claims implicate the core constitutional principle underlying the political question doctrine, namely, the separation of powers. We are doubtful, therefore,

that the political question doctrine was intended to apply in such circumstances. See *O'Brien* v. *Brown,* 409 U.S. 1, 11–12, 92 S. Ct. 2718, 34 L. Ed. 2d 1 (Marshall, J., dissenting), vacated as moot, 409 U.S. 816, 93 S. Ct. 67, 34 L. Ed. 2d 72 (1972).

Moreover, none of the considerations set forth in *Baker* are present in this case. First, the plaintiffs have identified no constitutional provision committing the resolution of Nielsen's disputed endorsement to a legislative or executive branch agency. Indeed, in the absence of such a provision, the legislature was free to grant to political parties broad authority to resolve such disputes. See General Statutes §§ 9-382 and 9-387.[16] Furthermore, the plaintiffs' claims present no special obstacles to judicial ascertainment and application of appropriate standards for resolving them, and adjudication of the claims does not require judicial policy-making properly left to another branch of government. On the contrary, the controversy raises issues of constitutional and statutory interpretation of the kind regularly entertained by courts.

Finally, the defendants' nonjusticiability claim derives no support from the three prudential considerations enumerated in *Baker*.[17] Judicial resolution of the plaintiffs' claims may readily be accomplished "without expressing lack of the respect due coordinate branches of government . . . ." *Baker* v. *Carr,* supra, 369 U.S. 217. Although political parties have wide leeway to select candidates for endorsement, both as a

---

[16] The right of a political party to manage its affairs without undue interference from the state or the courts is itself protected by the constitution. See parts II and IV of this opinion.

[17] "The last three considerations [enumerated in *Baker*] reflect a 'prudential' view, which would avoid adjudication 'when reaching the merits would force the Court to compromise an important principle or would undermine the Court's authority.' " *Fonfara* v. *Reapportionment Commission,* supra, 222 Conn. 185, quoting L. Tribe, American Constitutional Law (2d Ed. 1988) § 3-13, p. 96.

matter of constitutional law; see part IV of this opinion; and under state statutes; see part II of this opinion; there is no indication that the legislature sought to exclude courts completely from the adjudication of controversies relating to such matters.[18] Likewise, we are presented with no "unusual need for unquestioning adherence to a political decision already made . . . ." Id. Although a court must afford great deference to a party's decision to endorse, or not to endorse, a particular candidate, if the party's determination is clearly contrary to law blind acceptance of its decision is not appropriate. Lastly, judicial review of the plaintiffs' claims does not risk "multifarious pronouncements by various departments on one question"; id.; because no executive or legislative branch agency has plenary authority to consider such claims.

We are not persuaded, therefore, that the plaintiffs' action raises a nonjusticiable political question. Because the trial court properly determined that it had subject matter jurisdiction to adjudicate the plaintiffs' claims, we now turn to their merits.[19]

## II

The plaintiffs claim that the trial court improperly concluded that in the absence of proof by the plaintiffs that the ACP's resolution of the dispute was either illegal or irrational, Kezer's acquiescence in the ACP's resolution of the endorsement dispute was proper. We disagree.

---

[18] Although § 9-382 authorizes political parties to choose candidates pursuant to its rules, it also directs that the selection process be conducted "in a manner conforming with applicable law . . . ."

[19] We recognize, of course, that the issues raised by the plaintiffs' action relate to activities that are at the heart of our political process. Nonetheless, "the mere fact that the suit seeks protection of a political right does not mean it presents a political question." *Baker* v. *Carr,* supra, 369 U.S. 209. "The doctrine of which we treat is one of 'political questions,' not one of 'political cases.' The courts cannot reject as 'no law suit' a bona fide controversy as to whether some action denominated 'political' exceeds constitutional authority." Id., 217.

ACP rules promulgated pursuant to §§ 9-382 and 9-387 expressly provide that the ACP executive committee shall resolve any dispute as to the endorsement of candidates. See footnote 12. Accordingly, upon receiving Setaro's complaint, the executive committee met to discuss the complaint, concluding unanimously that Nielsen's endorsement was invalid because his nomination had not been seconded as required by ACP rules. The plaintiffs contend that the ACP rules did not require Nielsen's nomination to have received a seconding motion, and, therefore, that the defendants' failure to recognize Nielsen as the ACP endorsed candidate was improper.[20]

We first consider the proper scope of the trial court's review of the executive committee's decision to invalidate the purported endorsement. Political parties generally are free to conduct their internal affairs free from judicial supervision. See, e.g., *O'Brien* v. *Brown*, supra, 409 U.S. 4–5; *Lee* v. *Nielsen*, 120 R.I. 579, 582–83, 388 A.2d 1176 (1978). This common law principle of judicial restraint, rooted in the constitutionally protected right of free association,[21] serves the public interest by allowing the political processes to operate without

---

[20] The plaintiffs further claim that Kezer had an obligation to conduct an independent investigation of the ACP's resolution of the endorsement dispute, and that such an investigation would have revealed that the ACP executive committee had incorrectly concluded that Nielsen's nomination required a seconding motion. In view of our determination that the ACP's resolution of the dispute was not improper, we reject this claim. We need not decide whether, or under what circumstances, a political party's resolution of an endorsement dispute under § 9-387 might properly be the subject of an independent review by the secretary of the state.

[21] See, e.g., *Eu* v. *San Francisco Democratic Committee*, 489 U.S. 214, 224, 229–33, 109 S. Ct. 1013, 103 L. Ed. 2d 271 (1989) (state restrictions limiting political party's discretion in organizing itself, conducting its affairs and selecting its leaders impinge upon constitutionally protected associational rights); *Tashjian* v. *Republican Party of Connecticut*, 479 U.S. 208, 224, 107 S. Ct. 544, 93 L. Ed. 2d 514 (1986) (party's determination of boundaries of its own association, and of structure that best allows it to pursue its political goals, are constitutionally protected).

undue interference. *O'Brien* v. *Brown,* supra, 4–5. Because the nomination and endorsement of candidates for elective office are among the primary functions of political parties, "[j]udicial intervention in [the selection of convention delegates] traditionally has been approached with great caution and restraint." Id., 4.

Consistent with the historical autonomy of political parties, §§ 9-382 and 9-387 vested in the ACP broad discretion to select candidates and to resolve disputes as to endorsements in the manner prescribed by ACP rules. In accordance with the procedure set forth in the ACP's rules to resolve endorsement disputes, the ACP executive committee met and determined that, under those rules, Nielsen's nomination required a seconding motion. Because the executive committee's interpretation of party rules was an integral part of the deliberative process by which the committee resolved the endorsement dispute, the committee was entitled to wide latitude in interpreting and applying those rules. *Lee* v. *Nielsen,* supra, 120 R.I. 585; see also *Eu* v. *San Francisco Democratic Committee,* 489 U.S. 214, 229–30, 109 S. Ct. 1013, 103 L. Ed. 2d 271 (1989). In view of the narrowly circumscribed role of the judiciary in such matters, we agree with the trial court that the ACP's resolution of Setaro's challenge to Nielsen's endorsement must stand unless the defendants' actions were either demonstrably unlawful[22] or patently irrational.

As the trial court observed, ACP rules are not explicit on the issue of whether the nominations of state sen-

---

[22] Section 9-387 expressly requires that any dispute as to the endorsement of a candidate be resolved in accordance with applicable law, and the ACP concedes that it was not free to resolve the dispute in a discriminatory, fraudulent or otherwise illegal manner. Although the plaintiffs suggest that the executive committee may have intentionally misapplied ACP rules for the purpose of denying Nielsen the ACP endorsement, the trial court properly concluded that the plaintiffs had failed to prove that the committee acted corruptly or fraudulently.

ate candidates must be seconded. Indeed, chairperson Blick acknowledged that this issue had never before been raised.[23] Several provisions of the ACP rules, however, by virtue of their express reference to the seconding process, suggest that candidate nominations must receive a second. In particular, the ACP's state and district convention rules set forth the number of seconding speeches permitted for any one nomination, and the maximum length of time allowed for such speeches.[24] In addition, article I, § 5 (e), of the party's state rules provides that the executive committee may submit to nominating conventions "the nomination(s) of qualified candidates . . . which nominations shall be considered duly made and seconded upon the convening of such conventions. . . ." See footnote 9.

Certain other ACP documents also indicate that the seconding of candidate nominations is required by ACP convention rules and procedures. For example, a July 23, 1994 memorandum from Blick to all ACP

[23] Prior to 1992, the ACP had not conducted a convention to nominate and endorse candidates.

[24] A Connecticut Party State and District Convention Rules provide in relevant part: "4. NOMINATIONS AND DEBATE

"A. Remarks placing a name in nomination before the convention shall not exceed two (2) minutes in length. Remarks seconding a nomination shall not exceed one (1) minute in length. One speech for the purpose of nominating, and two for the purposes of seconding will be permitted, except by unanimous consent of the convention. . . .

"C. Only elected officials who are party members, endorsed candidates, convention delegates, permanent convention officers, and any enrolled party member designated by the Permanent Convention Chair for purposes of making a nominating or seconding speech, may address the convention except upon suspension of the rules.

"5. VOTING . . . .

"E. Balloting shall continue until one candidate has obtained the votes of a simple majority of those present and voting. In the event only one name is placed in nomination for endorsement, no roll call shall be in order, but upon motion of any delegate, duly seconded, and adopted by voice vote of the convention, the Permanent Secretary shall cast one vote for the endorsement.

"F. No delegate may cast a vote for a person not nominated. . . ."

convention chairpersons concerning convention proce-
dures refers to the seconding of nominations, and the
ACP form used to record the minutes of the district
convention directs the secretary of the convention to
list the names of all persons "nominated and seconded
. . . for the purpose of selecting a party endorsed can-
didate" for the office of state senate.[25] Moreover, there
is no indication in any ACP document that a second
is optional. Finally, the requirement of a seconding
motion promotes the party's legitimate interest in
ensuring that its endorsement decisions reflect some
degree of consensus among its membership. The trial
court properly concluded, therefore, that the record
supported the executive committee's interpretation of
ACP rules.[26]

---

[25] The ACP executive committee also considered a letter dated August 1,
1994, from Lawrence J. Halloran, counsel to the party, to chairperson Blick,
concerning the issue of seconding motions for candidate nominations. As
the trial court stated, the letter, which had been requested by Blick, was
a "candid [appraisal] of the legal situation presented by the endorsement
dispute" that included a summary of the arguments both for and against
the rules interpretation urged by Setaro. The letter contained the follow-
ing reasons why the executive committee could reasonably construe the
ACP rules as requiring a seconding motion for Nielsen's nomination: "Cer-
tainly, our rules and practice argue forcefully that nominations require a
second. Under ACP state rules, an Executive Committee recommended
nomination is deemed made and seconded when the convention convenes.
Our convention rules and agendas reflect seconding remarks, with no indi-
cation that they are optional.

"As a matter of policy, requiring a second would work no real injustice
now or in the future. The Executive Committee recommendation gives a
single-delegate convention the option to endorse the recommended candi-
date or make no endorsement. If supporters of other candidates seek our
endorsement, they can petition for delegate positions. One delegate should
not have the unilateral authority to overcome five Executive Committee
votes that underlie the endorsement recommendation. Based on these argu-
ments, a conclusion that the endorsement was improperly given Mr. Niel-
sen seems right and just."

[26] The plaintiffs claim that the executive committee allowed several other
candidates throughout the state to be endorsed by single-delegate conven-
tions. In each of these cases, however, the single delegate voted for the
candidate nominated by the executive committee. See footnote 9. More-

Because the ACP was entitled to exercise broad discretion in resolving the question of whether Nielsen's nomination required a second, the trial court was not free to substitute its judgment for that of the party. Rather, the court was obliged to accept the party's rules interpretation unless that determination was irrational. Although the executive committee might plausibly have reached a contrary conclusion, we agree with the trial court that the committee's interpretation of the ACP rules and, accordingly, its resolution of the dispute was reasonable. Therefore, the plaintiffs' claim that Kezer improperly deferred to the ACP's resolution of the challenge to Hamad's purported endorsement of Nielsen is without merit.

### III

The plaintiffs next claim that the defendants' refusal to recognize Nielsen as the ACP's endorsed candidate violated §§ 9-390 and 9-407, which provide for the nomination of state senate candidates by local delegates. Specifically, the plaintiffs contend that the ACP requirement that candidate nominations be seconded effectively disfranchised Hamad in contravention of the scheme of local control established by §§ 9-390 and 9-407. We are not persuaded.

Section 9-390 (g) authorizes major political parties to select convention delegates pursuant to the direct primary method, the procedure prescribed by ACP rules. Under that method of selecting delegates, party members residing in the senate district elect delegates to the party convention. Section 9-407 requires that the candidates for delegate shall also be party members from the senate district. Therefore, those selecting the

over, in the one other case where a single delegate attempted to nominate and endorse a candidate other than the candidate nominated by the executive committee, as in this case, the executive committee did not allow the nomination to stand.

convention delegates, and the delegate candidates themselves, must all reside in the local district.

The plaintiffs acknowledge that Hamad, a resident of the twenty-fourth senatorial district, was properly elected and duly seated as a convention delegate. By their terms, §§ 9-390 and 9-407 require no more. Failing to identify a violation of the letter of the law, however, the plaintiffs claim that the ACP's conduct violated the spirit of §§ 9-390 and 9-407.

Although we agree with the plaintiffs' general proposition that these statutory provisions create a system of local control over the selection of delegates, we fail to see how the ACP rule that required Nielsen's nomination to have received a second is inconsistent with that principle. First, under ACP rules, only Hamad, the duly elected local delegate, was authorized to endorse a candidate. Although the party rules permitted the ACP executive committee to nominate Setaro, whose nomination was thereby deemed made and seconded upon the convening of the convention; see footnote 9; the committee, which concededly included members who did not reside in the twenty-fourth senatorial district, had no authority to make an endorsement. Second, there is no claim that the seconding requirement was imposed on the twenty-fourth senatorial district convention in a discriminatory manner, because party rules require seconding motions for candidate nominations at both single and multiple delegate conventions. Finally, the lone delegate to a single delegate convention is not bound to endorse the executive committee's nominee; instead, the delegate may choose not to make an endorsement. This candidate selection method does not remove the selection process from local control in violation of §§ 9-390 and 9-407. Instead, it prevents a single delegate from alone controlling the candidate endorsement decision. In so doing, the rule strikes a reasonable balance between the

party's right to empower a lone delegate by authorizing single delegate conventions, and its interest in ensuring that the party endorsement reflects some minimal party consensus. We conclude, therefore, that the defendants' refusal to recognize Nielsen's endorsement on the ground that Nielsen's nomination had not received a seconding motion did not violate §§ 9-390 and 9-407.

## IV

Finally, the plaintiffs claim that the ACP rule requiring a second for the nomination of a candidate who has not been recommended by the executive committee violated Hamad's federal constitutional right[27] to vote for the candidate of his choice.[28] We disagree.

It has long been held that the right to vote is a "fundamental political right, because preservative of all rights." *Yick Wo* v. *Hopkins*, 118 U.S. 356, 370, 6 S. Ct. 1064, 30 L. Ed. 220 (1886); see also *Cousins* v. *Wigoda*, 419 U.S. 477, 489, 95 S. Ct. 541, 42 L. Ed. 2d 595 (1975); *Reynolds* v. *Sims*, 377 U.S. 533, 562, 84 S. Ct. 1362, 12 L. Ed. 2d 506 (1964). Because the right "must be recognized in any preliminary election that in fact determines the true weight a vote will have";

---

[27] Hamad also claims a violation of his rights under article sixth, § 4, of the Connecticut constitution, which guarantees the right of free suffrage. Because he has failed to provide an independent analysis of his claim under the state constitution, we limit our review to Hamad's claim under the United States constitution. See *State* v. *Williams*, 231 Conn. 235, 245 n.13, 645 A.2d 999 (1994); *State* v. *Carter*, 228 Conn. 412, 417 n.6, 636 A.2d 821 (1994).

[28] The plaintiffs also claim that the ACP's failure to provide them with notice and an opportunity to be heard prior to the executive committee's decision to invalidate Nielsen's nomination violated their right to due process under the fourteenth amendment to the United States constitution. We decline to consider this claim, however, because the plaintiffs failed to raise the issue in the trial court; Practice Book § 4185; and they have not demonstrated that the record is sufficient to warrant our review of the claim. See *State* v. *Golding*, 213 Conn. 233, 239–40, 567 A.2d 823 (1989).

*Gray* v. *Sanders*, 372 U.S. 368, 380, 83 S. Ct. 801, 9 L. Ed. 2d 821 (1963); "[a]ll procedures used by a State as an integral part of the election process must pass muster against the charges of discrimination or of abridgment of the right to vote." *Moore* v. *Ogilvie*, 394 U.S. 814, 818, 89 S. Ct. 1493, 23 L. Ed. 2d 1 (1968); see also *Tashjian* v. *Republican Party of Connecticut*, 479 U.S. 208, 227, 107 S. Ct. 544, 93 L. Ed. 2d 514 (1986); *United States* v. *Classic*, 313 U.S. 299, 318, 61 S. Ct. 1031, 85 L. Ed. 1368 (1941).

Although not every step in the electoral process necessarily is entitled to constitutional protection, there is little question that the selection of convention delegates pursuant to § 9-407 is an integral part of our elective system. Hamad does not contend, however, that the ACP violated his right to seek election as an ACP delegate, nor does he allege that he was prevented from voting as a convention delegate. He claims, rather, that his election as a delegate carried with it the right to *endorse* the candidate of his choice, and that the ACP seconding requirement deprived him of that right. We do not abase Hamad's role in the candidate selection process by concluding that, whatever the precise parameters of his rights as a delegate, the constitution does not require as much, at least not where, as here, the party's regulation of the delegate's participation in the process is of uniform application and rooted in legitimate interests of the party.

We are not persuaded that the rule requiring a second directly implicated any constitutionally protected right to vote that Hamad may have had as a convention delegate. Because one delegate conventions are not required by state law, the ACP was free to adopt a rule prohibiting a district convention in any district where one or more of the towns comprising the district were not represented by at least one delegate. Had the party chosen to promulgate such a rule, Hamad

would have had no right whatever to participate in the candidate selection or endorsement process. Because the ACP empowered Hamad, as a single delegate, to vote at the convention, the party retained the right to determine the extent to which, if at all, Hamad could effect the ACP endorsement. Furthermore, had Hamad been able to recruit additional ACP members in Bethel so that the town could have selected a second convention delegate, or had he persuaded an ACP member in Danbury or New Fairfield to become a convention delegate; see footnote 4; Hamad would have had the opportunity to obtain a second to his nomination of Nielsen. Finally, Hamad was not prevented from voting or otherwise participating as the duly elected convention delegate. He nominated Nielsen, and he chose not to vote for Setaro, with the result that neither candidate received the ACP endorsement.[29]

Moreover, Hamad's claim must be viewed in the context of the ACP's constitutionally protected associational rights. "There can no longer be any doubt that freedom to associate with others for the common advancement of political beliefs and ideas is a form of orderly group activity protected by the First and Fourteenth Amendments. . . . The right to associate with the political party of one's choice is an integral part of this basic constitutional freedom. . . . And of course this freedom protected against federal encroachment by the First Amendment is entitled under the Fourteenth Amendment to the same protection from infringement by the States. . . . Moreover, [a]ny interference with the freedom of a party is simultaneously an interference with the freedom of its adherents." (Citations omitted; internal quotation marks omitted.) *Cousins* v. *Wigoda*, supra, 419 U.S. 487–88. "Freedom of association means not only that an individual voter has the

---

[29] Indeed, the decision whether to endorse Setaro or no candidate at all was Hamad's alone.

right to associate with the political party of her choice . . . but also that a political party has a right to identify the people who constitute the association . . . and to select a standard bearer who best represents the party's ideologies and preferences." (Citations omitted; internal quotation marks omitted.) *Eu* v. *San Francisco Democratic Committee,* supra, 489 U.S. 224. Therefore, "[f]reedom of association also encompasses a political party's decisions about the identity of, and the process for electing, its leaders." Id., 229. Finally, because the constitutional protection extends to the "[p]arty's determination of the boundaries of its own association, and of the structure which best allows it to pursue its political goals"; *Tashjian* v. *Republican Party of Connecticut,* supra, 479 U.S. 224; a party has broad latitude to determine how best to organize itself and to conduct its affairs; *Eu* v. *San Francisco Democratic Committee,* supra, 230; including the discretion "to determine the appropriate standards for participation in the [p]arty's candidate selection process." *Democratic Party of United States* v. *Wisconsin ex rel. La Follette,* 450 U.S. 107, 124 n.27, 101 S. Ct. 1010, 67 L. Ed. 2d 82 (1981) (state cannot dictate process of selecting delegates to national convention); see also *Ripon Society, Inc.* v. *National Republican Party,* 525 F.2d 567, 585 (D.C. Cir. 1975), cert. denied, 424 U.S. 933, 96 S. Ct. 1147, 47 L. Ed. 2d 341 (1976) ("a party's choice, as among various ways of governing itself, of the one which seems best calculated to strengthen the party and advance its interests, [is protected by] the Constitution").

As we have discussed, the ACP rule that a candidate nomination must receive a second or, in the alternative, that the candidate must obtain the recommendation of the ACP executive committee, ensures that the party's endorsement is the product of the action of at least two party members. Because the ACP has a legiti-

mate interest in ensuring that its endorsement decision reflects some measure of party consensus, it was the ACP's right to determine how best to promote this interest. See *Eu* v. *San Francisco Democratic Committee*, supra, 489 U.S. 230; *Tashjian* v. *Republican Party of Connecticut*, supra, 479 U.S. 224; *Democratic Party of United States* v. *Wisconsin ex rel. La Follette*, supra, 450 U.S. 124; *Ripon Society, Inc.* v. *National Republican Party*, supra, 525 F.2d 585. Accordingly, we reject Hamad's claim that his federal constitutional rights were violated by the ACP seconding requirement for candidate nominations.[30]

## V

Because the plaintiffs have not demonstrated that they were entitled to recognition by the defendants of Hamad's purported endorsement of Nielsen, the trial court properly denied the plaintiffs' application for an injunction requiring the ACP to withdraw its August 2, 1994 letter to Kezer notifying her that the party had not endorsed a candidate for the twenty-fourth state senatorial district. Similarly, because the plaintiffs failed to establish a clear legal right to have Nielsen's name appear on the ACP line of the November 8, 1994 ballot, the trial court properly concluded that the plaintiffs were not entitled to an order of mandamus[31] direct-

---

[30] Because we conclude that Hamad's constitutional rights were not violated, we do not address the defendants' contention that Hamad's claim is not cognizable because the defendants' conduct may not fairly be characterized as "state action." See *Lugar* v. *Edmondson Oil Co.*, 457 U.S. 922, 924, 102 S. Ct. 2744, 73 L. Ed. 2d 482 (1982); *State* v. *Holliman*, 214 Conn. 38, 43, 570 A.2d 680 (1990).

[31] "A party seeking a writ of mandamus must establish: '(1) that the plaintiff has a clear legal right to the performance of a duty by the defendant; (2) that the defendant has no discretion with respect to performance of that duty; and (3) that the plaintiff has no adequate remedy at law.' " *Hennessey* v. *Bridgeport*, 213 Conn. 656, 659, 569 A.2d 1122 (1990), quoting *Vartuli* v. *Sotire*, 192 Conn. 353, 365, 472 A.2d 336 (1984). In view of our conclusion that the plaintiffs have not satisfied the first prong of this test, we need not consider whether the plaintiffs have met the remaining requirements.

ing Kezer to place Nielsen's name on the ballot as the ACP endorsed candidate.

The judgment is affirmed.

In this opinion BORDEN, NORCOTT and KATZ, Js., concurred.

BERDON, J., concurring. I agree with the well reasoned opinion of the court. I write separately, however, to express my concern, as the trial court did, that the A Connecticut Party (ACP) failed to provide the plaintiffs, Charles Hamad and Mark Nielsen, with notice or an opportunity to be heard before its executive committee made a decision directly affecting them. This failure, in my view, implicated the plaintiffs' rights to due process of law under the fourteenth amendment to the United States constitution.

"For more than a century the central meaning of procedural due process has been clear: Parties whose rights are to be affected are entitled to be heard; and in order that they may enjoy that right they must first be notified. . . . It is equally fundamental that the right to notice and an opportunity to be heard must be granted at a meaningful time and in a meaningful manner. *Armstrong* v. *Manzo*, 380 U.S. 545, 552 [85 S. Ct. 1187, 14 L. Ed. 2d 62 (1965)]. . . ." (Internal quotation marks omitted.) *All Brand Importers* v. *Dept. of Liquor Control*, 213 Conn. 184, 208, 567 A.2d 1156 (1989). It is well established, however, that only actions that are the responsibility of the state may be held to violate a person's federal due process right—in other words, only state action triggers a person's right to due process of law. *State* v. *Holliman*, 214 Conn. 38, 43, 570 A.2d 680 (1990).

It is clear to me that when a state gives a political party's nominee preferential access to the ballot, the conduct of that political party in choosing its nominee

constitutes state action. L. Tribe, American Constitutional Law (2d Ed. 1988) § 13-24, p. 1121 ("[i]n effect, therefore, the state delegates to the political party the decidedly governmental function of determining who may gain a place on the ballot"); see *Smith* v. *Allwright*, 321 U.S. 649, 664, 64 S. Ct. 757, 88 L. Ed. 987, reh. denied, 322 U.S. 769, 64 S. Ct. 1052, 88 L. Ed. 1594 (1944) (holding that discrimination practiced by a political party is state action if the state "requires a certain electoral procedure, prescribes a general election ballot made up of party nominees so chosen and limits the choice of the electorate in general elections for state offices, practically speaking, to those whose names appear on such a ballot"); *Georgia* v. *National Democratic Party,* 447 F.2d 1271, 1275 (D.C. Cir. 1971), cert. denied, 404 U.S. 858, 92 S. Ct. 109, 30 L. Ed. 2d 101 (1971) ("logic dictates that a state party's action in selecting *delegates* to its national convention is also invested with state action" [emphasis in original]).

Under this reasoning, of course, the ACP and its executive committee must furnish the minimum procedural safeguards necessary to ensure due process of law. See generally R. Berdon, "The Constitutional Right of the Political Party To Chart Its Own Course: Defining Its Membership Without State Interference," 22 Suffolk U. L. Rev. 933, 944–46 (1988). However, General Statutes § 9-387,[1] which governs the manner in which political parties in Connecticut must resolve disputes over endorsements or nominations, fails to require a political party to furnish notice or give the interested parties a right to be heard. The rules of the ACP apparently do not require these safeguards, either.

---

[1] General Statutes § 9-387 provides: "The state rules of each party shall prescribe the manner in which any dispute as to the endorsement by such party of a candidate for state, district or municipal office or for delegate or town committee member, including conflicting claims to such endorsement, shall be resolved."

I am troubled by these apparent gaps in the state's obligation to provide its citizens with due process of law. Nevertheless, it is clear that in this case, the plaintiffs failed to raise this claim properly before the trial court.[2] I leave the resolution of this issue, therefore, to another day.

[2] See footnote 28 of the majority opinion.