ALYSSA S. PETERSON *v.* HECTOR ROBLES ET AL.
(AC 32717)

Gruendel, Bear and Bishop, Js.

Argued January 5—officially released March 20, 2012

*Alyssa S. Peterson*, pro se, the appellant (plaintiff).

*R. Bartley Halloran*, with whom was *Kaitlin Halloran*, for the appellee (named defendant).

*Robert W. Clark*, special counsel to the attorney general, with whom, on the brief, was *George Jepsen*, attorney general, for the appellee (defendant Denise Merrill).

*Opinion*

BISHOP, J. The plaintiff, Alyssa S. Peterson, appeals from the judgment of the trial court in favor of the defendants, Hector Robles and the former secretary of the state, Susan Bysiewicz.[1] On appeal, the plaintiff claims that (1) she was prejudiced by the admission of

---

[1] The plaintiff sued secretary of the state Susan Bysiewicz solely in her official capacity. At the time this action was initiated, Susan Bysiewicz was the secretary of the state. As a result of the November, 2010 elections, Denise Merrill now holds the position of secretary of the state and, therefore, is presently the proper defendant and party to this appeal.

nonprobative, flawed and biased testimony in conjunction with her claim of procedural irregularities, and (2) the court improperly dismissed her claim of fraud against Robles. We affirm the judgment of the trial court.

The record reveals the following undisputed facts. On May 20, 2010, a convention of the Democratic town committee of the city of Hartford was held to endorse candidates for state representative from the assembly districts within the city, including the sixth assembly district. Soon after Georgianna Holloway, the chairperson of the Hartford Democratic party, opened the general convention, she separated the meeting into " 'mini conventions,' " one for each assembly district. Each assembly district convention, thereafter, came to order for the purpose of nominating a state representative candidate. Glenn Geathers served as chairperson, and Jane Appellof served as secretary for the sixth assembly district convention, which endorsed Robles as its candidate. Once endorsements were made at the separate assembly district conventions, the general meeting was called back in order and each district then reported the results of its separate meeting. During this reporting process, no discussion took place and no objections were made to the sixth assembly district convention's endorsement of Robles.

Thereafter, Robles submitted a "Certificate of Party Endorsement" to the secretary of the state, certifying that he was the endorsed candidate of the Democratic party for the sixth assembly district. The document, which was dated May 20, 2010, was signed by Geathers in his capacity as "Chairman or Presiding Officer of Meeting" and by Appellof as "Secretary of Meeting."[2]

---

[2] The "Certificate of Party Endorsement" for the endorsed candidates in the fourth assembly district and the seventh assembly district were certified in the same manner; the chair and/or secretary of the meeting specific to those districts certified the endorsement of those candidates to the secretary of the state. No challenge was presented to either of those endorsements.

The "Certificate of Party Endorsement" was submitted in a timely fashion according to the provisions of General Statutes § 9-391.[3] Subsequently, the plaintiff challenged Robles in a primary that took place on August 10, 2010. Robles won the primary by a nearly two to one margin.[4]

On October 14, 2010, the plaintiff filed this action against the defendants in which she alleged that the Hartford Democratic town committee's endorsement of Robles was invalid due to its failure to comply with § 9-391.[5] The plaintiff also sought relief purportedly pursuant to General Statutes § 9-387, on the basis of her subordinate claim that Robles engaged in fraudulent conduct in obtaining the party's endorsement and

---

[3] Section 9-391 (c) provides in relevant part: "Any certification to be filed under this subsection shall be received by the Secretary of the State, in the case of a candidate for the office of state senator or state representative, or the town clerk, in the case of a candidate for any other municipal office to be voted upon at a state election, not later than four o'clock p.m. on the fourteenth day after the close of the town committee meeting, caucus or convention, as the case may be. If such a certificate of a party's endorsement is not received by the Secretary of the State or the town clerk, as the case may be, by such time, such certificate shall be invalid and such party . . . shall be deemed to have neither made nor certified any endorsement of any candidate for such office. The candidate so endorsed for a municipal office to be voted upon at a state election . . . shall file with the Secretary of the State or the town clerk, as the case may be, a certificate, signed by that candidate, stating that such candidate was so endorsed, the candidate's name as the candidate authorizes it to appear on the ballot, the candidate's full street address and the title and district of the office for which the candidate was endorsed. Such certificate shall be attested by the chairman or presiding officer and the secretary of the town committee, caucus or convention which made such endorsement. . . ."

[4] From our review of the record, it appears that Robles garnered 946 votes; the plaintiff received 486 votes in her favor. We note that these results were certified to the secretary of the state without challenge by the plaintiff. The plaintiff makes no claim on appeal of any irregularities in the primary process or in its outcome.

[5] The record of the proceedings reveals that the trial court and parties referred to the provisions of General Statutes § 9-388. Those references were erroneous. The trial court granted the plaintiff's oral motion to amend her allegations to claim a violation of § 9-391.

receiving public campaign funding. On October 25, 2010, following an evidentiary hearing, the court ruled in favor of the defendants on the first claim, finding the endorsement valid. The court also granted Robles' motion to dismiss the second claim on the basis of its determination that § 9-387[6] provides for an administrative remedy through the political process. This appeal followed.

## I

Before reaching the merits of the appeal, we first must address the threshold issue of whether the plaintiff's claims regarding the validity of the certification are moot and, if so, whether we have jurisdiction on the basis of an exception to the mootness doctrine.

"Mootness is a threshold issue that implicates subject matter jurisdiction, which imposes a duty on the court to dismiss a case if the court can no longer grant practical relief to the parties." (Internal quotation marks omitted.) *New Image Contractors, LLC* v. *Village at Mariner's Point Ltd. Partnership*, 86 Conn. App. 692, 698, 862 A.2d 832 (2004). "When, during the pendency of an appeal, events have occurred that preclude an appellate court from granting any practical relief through its disposition of the merits, a case has become moot. . . . It is a well-settled general rule that the existence of an actual controversy is an essential requisite to appellate jurisdiction; it is not the province of appellate courts to decide moot questions, disconnected from the granting of actual relief or from the determination of

---

[6] Section 9-387 provides: "The state rules of each party shall prescribe the manner in which any dispute as to the endorsement by such party of a candidate for state, district or municipal office or for town committee member, or as to the selection by such party of a delegate to a convention, including conflicting claims to such endorsement or selection, shall be resolved."

which no practical relief can follow." (Internal quotation marks omitted.) *In re Steven M.*, 264 Conn. 747, 754, 826 A.2d 156 (2003).

As noted, after Robles received the party's endorsement for state representative, he defeated the plaintiff in a primary. Additionally, since the filing of this action, Robles won the general election and now serves as a state representative in the General Assembly. These facts strongly suggest that the plaintiff's complaint regarding the endorsement process is moot. At oral argument before this court, the plaintiff tacitly acknowledged the mootness of her complaint by stating that she has no objection to the primary results or to Robles' subsequent success in the general election. Indeed, she does not seek to have Robles unseated or his victory in the general election invalidated. However, in spite of conceding the court's inability to fashion any practical relief for her, the plaintiff requests that this court issue an opinion condemning the endorsement process.[7] Because we are not jurisdictionally competent to issue advisory opinions, this is an invitation we must decline. See *Martino* v. *Scalzo*, 113 Conn. App. 240, 242 n.2, 966 A.2d 339, cert. denied, 293 Conn. 904, 976 A.2d 705 (2009) ("[our Supreme Court has] consistently held that [our courts should] not render advisory opinions" [internal quotation marks omitted]). Therefore, because there is no practical relief that this court can afford the plaintiff in regard to her claim that the certificate of endorsement was invalid, the issues regarding irregularities in the endorsement process are moot.

Nevertheless, in spite of the mootness of the plaintiff's claim in this regard, we may have jurisdiction over

---

[7] Regarding the endorsement irregularities alleged by the plaintiff, the plaintiff initially sought to have the certificate of endorsement vacated and Robles' name removed from the primary and general election ballots. At this juncture, as acknowledged by the plaintiff, neither request, if successful, would provide any practical relief to the plaintiff, particularly because she does not seek to invalidate the results of the primary or general election.

this appeal if the plaintiff's claims, by their nature, are likely to arise again and are likely to evade review because of time limitations inherent in the conduct, and its effects, at the heart of her complaint. "An otherwise moot question, [however] may qualify for review under the well established capable of repetition, yet evading review exception to the mootness doctrine. See *Loisel* v. *Rowe*, 233 Conn. 370, 378, 660 A.2d 323 (1995). In *Loisel*, our Supreme Court set forth three requirements that an otherwise moot question must satisfy in order to qualify for review under this exception. First, the challenged action, or the effect of the challenged action, by its very nature, must be of a limited duration so that there is a strong likelihood that the substantial majority of cases raising a question about its validity will become moot before appellate litigation can be concluded. Second, there must be a reasonable likelihood that the question presented in the pending case will arise again in the future, and that it will affect either the same complaining party or a reasonably identifiable group for whom that party can be said to act as surrogate. Third, the question must have some public importance. Unless all three requirements are met, the appeal must be dismissed as moot." (Internal quotation marks omitted.) *In re Priscilla A.*, 122 Conn. App. 832, 836, 2 A.3d 24 (2010).

We begin our analysis with the first requirement of *Loisel*, which embodies the "evading review" aspect of the exception. "[A] party typically satisfies [the first] prong if there exists a functionally insurmountable time [constraint]"; (internal quotation marks omitted) *Dutkiewicz* v. *Dutkiewicz*, 289 Conn. 362, 367, 957 A.2d 821 (2008); or "the challenged action had an intrinsically limited lifespan." *Loisel* v. *Rowe*, supra, 233 Conn. 383. In other words, "[t]his requirement is satisfied when there is a strong likelihood that the inherently limited duration of the action will cause a substantial majority

of cases raising the same issue to become moot prior to final appellate resolution." *Burbank* v. *Board of Education*, 299 Conn. 833, 840, 11 A.3d 658 (2011). While we acknowledge that an election campaign takes place within a limited time parameter, we do not conclude that the duration of the election cycle, in this instance, prevented meaningful and timely appellate review of the plaintiff's election process claims or that election claims, generally, are of such a limited duration that the majority of them would elude appellate review.[8] We are mindful, as well, that the particular time compression in this instance was influenced by the plaintiff's delay in not filing a complaint until October 14, 2010, in regard to the irregularities she claims occurred in May, nearly five months earlier.

As a general proposition, we acknowledge that complaints involving the election process, in fact, do have an inherently limited duration for resolution simply because the time spans between endorsement and general election, endorsement and primary, and from primary to general election are all limited as prescribed by statute. In assessing whether such time limitations serve to create an insurmountable obstacle to appellate review, it is reasonable to assess our judiciary's historic response to election related complaints. In this regard, a review of past election related appeals reveals that our courts have characteristically responded in a timely and effective manner. The circumstances in *Nielsen* v. *Kezer*, 232 Conn. 65, 652 A.2d 1013 (1995) are illustrative. In *Nielsen*, A Connecticut Party (party) had endorsed a candidate for a state senate seat at its convention on July 23, 1994. Id., 68. Thereafter, on August

---

[8] A review of the record reveals that while the certificate of endorsement was issued in May, approximately six months prior to the general election, the plaintiff did not seek judicial redress until she filed her complaint on October 14, 2010. Even so, the trial court responded with alacrity by timely conducting a hearing and issuing its ruling on October 25, 2010, less than two weeks after the filing of the complaint.

2, 1994, the executive committee sustained a challenge to the endorsement, and, based on the party's decision not to endorse any candidate, Pauline R. Kezer, the secretary of the state at the time, notified the plaintiff that his name would not appear on the ballot as the party endorsed candidate. Id., 71. The plaintiff thereafter brought a mandamus action to compel the placing of his name on the ballot. Id., 71–72. On September 8, 1994, the trial court rendered judgment, and an appeal was filed on the next day. Id., 68 n.1. Because of the nature of the claim and the inherently limited time period of the election cycle, the Supreme Court ordered an expedited process, which resulted in the issuing of a decision by the Supreme Court on September 29, 1994, the same day as oral argument. Id., 68 n.2.

Similarly, in *Bysiewicz* v. *DiNardo*, 298 Conn. 748, 6 A.3d 726 (2010), the judicial process timely responded to an election related issue regarding whether the plaintiff, Susan Bysiewicz, a candidate for the Democratic nomination for the office of attorney general, met the statutory qualifications to hold the office she sought. The record in *Bysiewicz* reveals that on January 13, 2010, she declared her candidacy for the office of attorney general. Id., 753. When questions emerged regarding the statutory qualifications for the office, an opinion was sought from Richard Blumenthal, the attorney general at the time, regarding the constitutionality of the statutory requirements. Id. Blumenthal responded with a letter dated February 2, 2010, stating that the requirement of active practice for ten years was, indeed, constitutional. *Bysiewicz* v. *DiNardo*, Superior Court, judicial district of Hartford, Docket No. CV-10-6008194-S (May 5, 2010). Bysiewicz thereafter brought an action for a declaratory judgment seeking a determination of whether she met the statutory qualifications. *Bysiewicz* v. *DiNardo*, supra, 754. In response to her filing and various motions by intervening parties and would-be

intervenors, the trial court held a series of scheduling conferences, conducted evidentiary hearings and held oral argument that concluded on April 22, 2010. *Bysiewicz* v. *DiNardo*, supra, Superior Court, judicial district of Hartford, Docket No. CV-10-6008194-S. Thereafter, on May 5, 2010, the trial court issued its written memorandum of decision. Id. Once the plaintiff filed an appeal from the trial court decision, the Supreme Court ordered an expedited briefing and oral argument schedule and issued its oral decision from the bench on May 18, 2010, less than two weeks after the trial court's decision. *Bysiewicz* v. *DiNardo*, supra, 751–52.

These cases illustrate that when time sensitive election cases have been brought to court, the judicial process has been expeditious, and timely decisions have been made.[9] On the basis of our judiciary's history of responses to election irregularity claims, we do not conclude that the inherent time limitation of an election cycle will typically prevent a court, upon review, from timely resolution of an election related claim. Of course, in the present matter, the urgency was exacerbated by the timing of the plaintiff's response to her dissatisfaction with the actions of the Hartford Democratic party. Based on history, we have little doubt that had the plaintiff timely pursued her complaints, our court system would have been able to adjudicate the issues timely so that, if merited, practical relief could have been provided to the plaintiff. By initiating this action well after the primary had been held and mere weeks before the general election, the plaintiff, on her own, created a situation in which timely relief would have been highly unlikely. In sum, we conclude that based

[9] See *Caruso* v. *Bridgeport*, 285 Conn. 618, 941 A.2d 266 (2008); see also *In re Election for Second Congressional District*, 231 Conn. 602, 653 A.2d 79 (1994). For obvious reasons, the court cannot respond during an election cycle when a plaintiff brings a claim seeking to set aside an election that has already taken place, but even in these less time sensitive cases, the court has moved with alacrity.

on Connecticut's historic treatment of election related litigation, the plaintiff's claims premised on election irregularities are moot, and they are not saved by any exception rendering them available for review.

II

The plaintiff also claims that the court improperly dismissed her claim of fraud by Robles. More specifically, she claims that the court improperly determined that § 9-387 provides for a remedy through the political process and not through the courts. We disagree.

The plaintiff claims that Robles engaged in fraudulent conduct in order to receive and to maintain his endorsement and in order to receive public campaign funds. More specifically, she claims that the defendant made false and fabricated statements regarding his police service in order to obtain the party's endorsement and to preserve his eligibility to receive $26,000 of public campaign finance dollars and that those who endorsed and voted for him relied on the veracity of these statements in supporting him. She suggests in her brief that she had exhausted her administrative remedies under § 9-387 by bringing her concerns regarding potential fraud to the Hartford Democratic town committee. In making this argument, the plaintiff conflates her election irregularity claims concerning the validity of the certificate of endorsement with her claim against Robles regarding fraud. Although § 9-387 discusses a process for the resolution of endorsement disputes, it does not address fraud claims or a claim of misuse of campaign funds.

The administrative remedy for claims of fraud or improper use of campaign funds is set forth in General Statutes § 9-7b regarding the duties and powers of the state elections enforcement commission (commission).[10] In short, at the time of the alleged fraud and

___

[10] Public Acts 2011, No. 11-48, § 58, resulted in the consolidation of several state agencies, including the state elections commission, into one umbrella

improper campaign finance practices, a claimant has the statutory right to file a complaint with the commission which, in turn, has a statutory duty and authority to investigate any such complaints and issue orders according to its findings. It is not apparent to this court that the plaintiff availed herself of this public right. Rather than act on her right to file a complaint with the commission, the plaintiff asks this court to order the commission to conduct such an investigation. Even if this court had such authority, a doubtful proposition, it would be unusual, indeed, for a court to instigate a complaint on behalf of a citizen who apparently has declined to do so on her own behalf. We conclude that the court properly dismissed the plaintiff's fraud claim on the basis that the plaintiff has not exhausted the administrative remedy of lodging a complaint with the commission.

The judgment is affirmed.

In this opinion the other judges concurred.

agency, the office of governmental accountability, for administrative and fiscal control. The state elections enforcement commission is the successor to the state elections commission.