FEDERAL DEPOSIT INSURANCE CORPORATION *v.*
PEABODY, N.E., INC., ET AL.
(15366)

Peters, C. J., and Callahan, Borden, Berdon, Norcott, Katz and Palmer, Js.

Argued May 28—officially released August 20, 1996

*Gregory T. D'Auria,* assistant attorney general, with whom were *Lawrence Russ,* assistant attorney general, and, on the brief, *Richard Blumenthal,* attorney gen-

eral, for the appellant (third party defendant department of transportation).

*James J. Myers*, pro hac vice, with whom was *Lawrence H. Dickson*, for the appellees (defendants-third party plaintiffs).

*Donald E. Frechette*, for the appellee (plaintiff).

CALLAHAN, J. The state department of transportation (state) appeals from the trial court's denial of its motion to dismiss the complaint of the third party plaintiffs, Peabody, N.E., Inc., Peabody International Corporation and the Federal Insurance Company[1] (collectively, Peabody), for lack of subject matter jurisdiction.

The state claims that the trial court improperly concluded that Peabody, a general contractor that had contracted with the state to reconstruct Route 8 and the Commodore Hull Bridge between the towns of Shelton and Derby, could maintain this third party action against the state, based on a subcontractor's claim for damages, even though Peabody has not conceded liability to the subcontractor in the third party complaint. The trial court concluded that the waiver of the state's sovereign immunity contained in General Statutes § 4-61 (a)[2] for

---

[1] The Federal Insurance Company is the surety on the payment bond secured by Peabody International Corporation and Peabody, N.E., Inc., to guarantee payment for all materials and labor used by subcontractors in the execution of the contract of Peabody International Corporation and Peabody, N.E., Inc., with the state.

[2] General Statutes § 4-61 provides in relevant part: "Actions against the state on highway and public works contracts. Arbitration. (a) *Any person, firm or corporation which has entered into a contract with the state*, acting through any of its departments, commissions or other agencies, for the design, construction, construction management, repair or alteration of any highway, bridge, building or other public works of the state or any political subdivision of the state *may, in the event of any disputed claims under such contract* or claims arising out of the awarding of a contract by the commissioner of public works, *bring an action against the state* to the superior court for the judicial district of Hartford-New Britain *for the purpose of having such claims determined* . . . ." (Emphasis added.)

parties contracting directly with the state was intended also to waive the state's sovereign immunity to allow third party actions by a general contractor, premised upon the *conditional* liability of the general contractor to a subcontractor. We disagree and reverse the judgment of the trial court.[3]

The relevant facts are undisputed. On November 30, 1983, Peabody entered into a contract with the state for the reconstruction of Route 8 and the Commodore Hull Bridge between Shelton and Derby. Peabody thereafter entered into a subcontract with Standard Structural Steel, Inc. (Standard), for the supply and erection of structural steel on the project. During the course of the project, Standard allegedly incurred extra costs for labor, equipment and materials, as well as increased overhead and other assorted costs resulting from delays, work stoppages, and errors and revisions in the plans and specifications for the project. Peabody asserts that the state, not Peabody, was responsible for the delays and errors that caused Standard's unanticipated expenses.

In May, 1993, the plaintiff, the Federal Deposit Insurance Corporation, as the receiver of the New Connecticut Bank and Trust Company and the successor in interest to Standard, brought the underlying action against Peabody, seeking approximately $14.8 million in damages allegedly suffered by Standard. Thereafter, Peabody answered the plaintiff's complaint and moved to implead the state. The trial court, *L. Sullivan, J.*, granted Peabody's impleader motion, and Peabody served its third party complaint upon the state. The state moved to dismiss the third party complaint and

---

[3] In the only reported decision in the state discussing this issue, *Walter Kidde Constructors, Inc.* v. *State*, 37 Conn. Sup. 50, 72, 434 A.2d 962 (1981), the trial court concluded that "the first condition precedent to [a general contractor] successfully suing on behalf of its subcontractors [is] an allegation of its own liability to them for the claimed damages."

Peabody moved to amend that complaint. The trial court, *Corradino, J.*, granted the motion to amend and denied the motion to dismiss. The state appealed from the judgment of the trial court to this court upon the granting of certification by the Chief Justice pursuant to General Statutes § 52-265a.[4]

I

The resolution of this appeal turns upon the sufficiency of Peabody's pleadings to survive a motion to dismiss for lack of subject matter jurisdiction. In denying the state's motion to dismiss, the trial court took cognizance of both Peabody's initial third party complaint and its amended third party complaint. As a preliminary matter, we must first decide which of Peabody's two third party complaints should be considered in deciding the issue presented.

In Peabody's answer to the plaintiff's complaint and in its initial third party complaint, Peabody denied its

[1] General Statutes § 52-265a provides in relevant part: "Direct appeal on questions involving the public interest. (a) . . . [A]ny party to an action who is aggrieved by an order or decision of the superior court in an action which involves a matter of substantial public interest and in which delay may work a substantial injustice, may appeal under this section from the order or decision to the supreme court within two weeks from the date of the issuance of the order or decision. The appeal shall state the question of law on which it is based.

"(b) The chief justice shall, within one week of receipt of the appeal, rule whether the issue involves a substantial public interest and whether delay may work a substantial injustice.

"(c) Upon certification by the chief justice that a substantial public interest is involved and that delay may work a substantial injustice, the trial judge shall immediately transmit a certificate of his decision, together with a proper finding of fact, to the chief justice, who shall thereupon call a special session of the supreme court for the purpose of an immediate hearing upon the appeal.

"(d) The chief justice may make orders to expedite such appeals, including orders specifying the manner in which the record on appeal may be prepared."

liability to Standard for Standard's damages.[5] Peabody alleged, however, that *if* it were liable to Standard, it should be indemnified by the state. In its amended third party complaint, Peabody admitted its liability to Standard *to the extent that Peabody recovered damages from the state* based upon Standard's claims.[6] This "admission" is, of course, actually not an admission at all, but only a statement of the obvious. Furthermore, it is merely a restatement of Peabody's allegations in its original third party complaint to the effect that Peabody would be liable to Standard in the event that Peabody was successful in its third party action against the state based upon damages incurred by Standard.

---

[5] Peabody's initial third party complaint against the state alleges in relevant part: "(2) On or about November 30, 1983 . . . Peabody entered into combined Contracts Nos. 126-119 and 36-137 with . . . the [s]tate of Connecticut [d]epartment of [t]ransportation for the reconstruction of Route 8 and the Commodore Hull Bridge over the Housatonic River from Shelton to Derby.

"(3) On or about February 8, 1984 . . . Standard entered into a subcontract with Peabody to furnish and erect structural steel and related miscellaneous items in furtherance of Peabody's aforesaid contract with the [s]tate of Connecticut [d]epartment of [t]ransportation.

"(4) *To the extent [that the] plaintiff incurred the damages and expenses as alleged, such damages and expenses were caused by acts and/or omissions of the [s]tate of Connecticut and not by any acts and/or omissions of Peabody.*

"(5) *To the extent that [Peabody is] found responsible to Standard for all or part of the claims set forth in [the plaintiff's c]omplaint asserting Standard's claims, [Peabody is] entitled under the law and under the terms and conditions of their [c]ontract with the [s]tate of Connecticut to recover all such sums from the [s]tate of Connecticut [d]epartment of [t]ransportation. . . .*" (Emphasis added.)

[6] Peabody's amended third party complaint alleges in relevant part: "(14) To the extent that Standard incurred damages as alleged, all such damages were caused by the acts, omissions, interferences and delays of [the state] which constituted breaches of [the state's] contract with Peabody. There is due to Peabody from [the state] such amount as Peabody may be found liable to Standard plus overhead and profit due to [the state's] contract breaches and delays, disruptions and interferences with Peabody and Standard's performance of the structural steel and miscellaneous iron work of Peabody's contract with [the state]. *To the extent that Peabody recovers from [the state], except for Peabody's overhead and profit, Peabody is liable to Standard.*" (Emphasis added.)

Regardless, however, of the substantive similarity between Peabody's two third party complaints, it was nonetheless inappropriate for the trial court to consider Peabody's amended third party complaint, rather than its initial complaint, when acting on the state's motion to dismiss for lack of subject matter jurisdiction. "As we have stated many times before, the doctrine of sovereign immunity implicates subject matter jurisdiction and is therefore a basis for granting a motion to dismiss." *Amore* v. *Frankel*, 228 Conn. 358, 364, 636 A.2d 786 (1994); *Lussier* v. *Dept. of Transportation*, 228 Conn. 343, 349–50, 636 A.2d 808 (1994); *White* v. *Burns*, 213 Conn. 307, 312, 567 A.2d 1195 (1990). "It is axiomatic that once the issue of subject matter jurisdiction is raised, it must be immediately acted upon by the court." *Gurliacci* v. *Mayer*, 218 Conn. 531, 545, 590 A.2d 914 (1991); *Statewide Grievance Committee* v. *Rozbicki*, 211 Conn. 232, 245, 558 A.2d 986 (1989); *Cahill* v. *Board of Education*, 198 Conn. 229, 238, 502 A.2d 410 (1985). "Whenever the absence of jurisdiction is brought to the notice of the court or tribunal, cognizance of it must be taken and the matter passed upon before it can move one further step in the cause; as any movement is necessarily the exercise of jurisdiction. . . . The point has been frequently made." (Citations omitted; internal quotation marks omitted.) *Baldwin Piano & Organ Co.* v. *Blake*, 186 Conn. 295, 297–98, 441 A.2d 183 (1982); see also *Kohn Display & Woodworking Co.* v. *Paragon Paint & Varnish Corp.*, 166 Conn. 446, 448, 352 A.2d 301 (1974); *Woodmont Assn.* v. *Milford*, 85 Conn. 517, 524, 84 A. 307 (1912).

Consequently, when the state moved to dismiss Peabody's initial third party complaint because of a lack of subject matter jurisdiction, the trial court was obligated to construe that complaint in the manner most favorable to Peabody and to rule upon the state's motion before considering Peabody's motion to amend. *Gurli-*

*acci* v. *Mayer,* supra, 218 Conn. 545 ("the trial court should not have allowed the amendment [to the complaint] before ruling on the motion to dismiss [for lack of subject matter jurisdiction]"); see *Antinerella* v. *Rioux,* 229 Conn. 479, 489, 642 A.2d 699 (1994); *Reynolds* v. *Soffer,* 183 Conn. 67, 68, 438 A.2d 1163 (1981). If the state's motion had been granted, as we are persuaded it should have been, the trial court would have been without jurisdiction to allow Peabody to amend its pleadings. *Gurliacci* v. *Mayer,* supra, 545; *Woodmont Assn.* v. *Milford,* supra, 85 Conn. 524. We must, therefore, focus on Peabody's initial third party complaint to determine whether that complaint fits within the parameters of the limited waiver of the state's sovereign immunity contained in § 4-61 (a).

## II

The state claims that the allegations of Peabody's third party complaint are, on their face, insufficient to allege a waiver of the state's sovereign immunity because they fail to allege that Peabody itself has a disputed claim under its contract with the state as required by § 4-61 (a). The state argues that Peabody was required to admit liability to Standard before proceeding with an action against the state. The state claims that in the absence of such an admission, Peabody would not have a "disputed [claim] under [its] contract" with the state within the meaning of § 4-61 (a) because it would have no obligation to pay Standard. The state contends that because Peabody did not admit liability to Standard, Peabody's third party complaint lacked an essential jurisdictional element, and the trial court was required to dismiss the complaint for lack of subject matter jurisdiction. Peabody contends, to the contrary, that it has adequately pleaded the existence of a disputed claim under its contract with the state so as to bring it within the purview of the statutory waiver

of sovereign immunity provided by § 4-61 (a). We agree with the state.

Section 4-61 (a) waives sovereign immunity for any "person, firm or corporation which has entered into a contract with the state . . . for the design, construction, construction management, repair or alteration of any highway, bridge, building or other public works of the state . . . ." Such an entity "may, in the event of any disputed claims under such contract . . . bring an action against the state . . . for the purpose of having such claims determined." General Statutes § 4-61 (a). The issue presented by this appeal is whether a general contractor has a "disputed [claim] under [its] contract" with the state, within the meaning of § 4-61 (a), if the general contractor's claim against the state takes the form of a claim for indemnification that is based upon the pending claim of a subcontractor.

Our analysis of this issue is "guided by settled principles of statutory construction that assist us in ascertaining the intent of the legislature. . . . The legislative intent is to be discerned by reference to the language of the statute, its legislative history and surrounding circumstances, the policy the [statute] was designed to implement, and the statute's relationship to the existing legislation and common law principles governing the same subject matter." (Citation omitted; internal quotation marks omitted.) *Hunte* v. *Blumenthal*, 238 Conn. 146, 152, 680 A.2d 1231 (1996).

Our analysis is more specifically illuminated by the well settled principle that "the sovereign is immune from suit unless the state, by appropriate legislation, consents to be sued. *State* v. *Chapman*, 176 Conn. 362, 364, 407 A.2d 987 (1978); *Baker* v. *Ives*, 162 Conn. 295, 298, 294 A.2d 290 (1972); *State* v. *Hartford*, 50 Conn. 89, 90–91, 47 A. 622 (1882). When the state waives that immunity by statute . . . a party attempting to sue

under the legislative exception must come clearly within its provisions, because [s]tatutes in derogation of sovereignty should be strictly construed in favor of the state, so that its sovereignty may be upheld and not narrowed or destroyed . . . ." (Internal quotation marks omitted.) *Berger, Lehman Associates, Inc.* v. *State*, 178 Conn. 352, 356, 422 A.2d 268 (1979). "Where there is any doubt about [the] meaning or intent [of a statute in derogation of sovereign immunity, it is] given the effect which makes the least rather than the most change in sovereign immunity." *White* v. *Burns*, supra, 213 Conn. 312.

"As with any issue of statutory interpretation, our initial guide is the language of the statute itself." (Internal quotation marks omitted.) *Herbert S. Newman & Partners* v. *CFC Construction Ltd. Partnership*, 236 Conn. 750, 756, 674 A.2d 1313 (1996). Section 4-61 (a) expressly states that it shall apply only to "disputed claims" arising under certain types of construction contracts between the state and a party with whom the state has contracted. In this case, only Peabody, the general contractor, has a contract with the state. Standard had no contract with the state and, therefore, could not sue the state directly.

Recognizing the state's undisputed sovereign immunity as to the subcontractor under § 4-61 (a), the plaintiff, the subcontractor's successor in interest, brought suit against the general contractor, with whom it does have a contract. The only existing "disputed claim" at this point, therefore, is between the general contractor and the subcontractor.

In § 4-61 (a), the legislature did not, as it has done in the context of private sector claims, allow suits invoking the contingent liability of parties who "may be liable" at some point in the future. See General Statutes § 52-102a (defendant in civil suit may move court for

permission to file third party complaint upon any person not party to action "who is or *may be* liable to him for all or part of the plaintiff's claim against him" [emphasis added]). Thus, under the plain language of § 4-61 (a), and applying the strict construction that we must apply to statutory language in derogation of sovereign immunity; see *Struckman* v. *Burns,* 205 Conn. 542, 558, 534 A.2d 888 (1987) (clear intent to waive sovereign immunity must be disclosed " 'by the use of express terms or by force of a necessary implication' "); we are persuaded that a general contractor who has entered into a contract with the state cannot bring a third party action against the state based on the mere prospect that the contractor *may be* liable to a subcontractor at some point in the future. That scenario does not constitute a disputed claim by the contractor against the state.

Our conclusion finds support in the legislative history of § 4-61. That history reflects the narrow and limited purpose for the exception to sovereign immunity contained in § 4-61 (a), and indicates that impleaders like that in the present appeal were not contemplated. At the time § 4-61 (a) was enacted, suits against the state by contractors were not countenanced because of sovereign immunity. Individualized legislative authorization to sue was required to be sought by petition before an action could be brought against the state. The legislature enacted § 4-61 in 1957 because of the mounting prevalence of these petitions for permission to sue the state. 7 S. Proc., Pt. 3, 1957 Sess., p. 1636. "The legislature wanted to reduce the number of petitions for permission to sue the state that it received involving suits over state construction contracts. 7 H.R. Proc., Pt. 4, 1957 Sess., p. 1937." *DeFonce Construction Corp.* v. *State,* 198 Conn. 185, 189, 501 A.2d 745 (1985). Another reason for allowing parties who had contracted with the state to sue the state directly without seeking legislative

authorization was the hope that affording contractors the right to sue would reduce the costs of construction projects to the state by eliminating the cost of the lengthy legislative authorization process that was often built into state construction contracts. Conn. Joint Standing Committee Hearings, General Law, Pt. 2, 1957 Sess., p. 436, remarks of Representative Merrill S. Dreyfus. Nothing, however, in the 1957 legislative history of § 4-61 or in the legislative history of the subsequent revisions to that statute; see 34 S. Proc., Pt. 6, 1991 Sess., p. 2165; 34 H.R. Proc., Pt. 22, 1991 Sess., pp. 8531–35; hints at the possibility that the legislature intended to allow a general contractor to implead the state in a suit between the contractor and a subcontractor, and thereby to permit the subcontractor to do indirectly what it could not do directly.

If general contractors on state construction projects were allowed to deny liability to subcontractors and then simply implead the state each time a subcontractor brought suit against them, the subcontractors effectively would be able to prosecute their claims against the state indirectly through the general contractors, increasing the complexity and volume of litigation against the state. Section 4-61 (a) expressly grants the right to sue the state only to contractors who have "entered into a contract with the state" and who have a dispute "under such contract." Nowhere in § 4-61 or elsewhere in the General Statutes is there any provision that grants a subcontractor, who does not have a contract with the state, the right to sue the state.

"[T]he state's sovereign right not to be sued without its consent is not to be diminished by statute, unless a clear intention to that effect on the part of the legislature is disclosed, by the use of express terms . . . ." (Internal quotation marks omitted.) *White* v. *Burns*, supra, 213 Conn. 312–13. In the absence of an expressed legislative intent to the contrary, it would be incongruous

for the legislature in enacting § 4-61 (a) to have limited the right to sue the state to contractors having a direct contract with the state, but to allow subcontractors who have no contract with the state to sue the state indirectly through the procedural vehicle of a third party complaint. We conclude, therefore, that a contractor cannot implead the state in an action against the contractor by a subcontractor unless the contractor admits liability to the subcontractor and incorporates the subcontractor's claim into its own, so that the contractor then has a disputed claim under its own direct contract with the state.[7]

The judgment is reversed and the case is remanded with direction to grant the state's motion to dismiss the third party complaint and to render judgment thereon.

In this opinion PETERS, C. J., and BORDEN, NORCOTT, KATZ and PALMER, Js., concurred.

BERDON, J., dissenting. Reminiscent of eighteenth century common law pleading, the majority concludes that a third party complaint cannot be amended to allege facts sufficient to establish a court's jurisdiction. It was my understanding that Connecticut had abandoned this archaic legalism upon entering the twentieth century.[1]

---

[7] We realize that § 4-61 requires the general contractor to give notice of a factual basis for its claims against the state within two years of the completion of the contract or the execution of the certificate of acceptance, whichever is earlier. Section 4-61 also requires that a suit be initiated within three years of the earlier of those events. As Peabody points out, these limitation periods impose significant constraints on general contractors. This argument, however, does not change our interpretation of the statute and is more appropriately addressed to the legislature.

[1] I recognize that Woodmont Assn. v. Milford, 85 Conn. 517, 524, 84 A. 307 (1912), decided eighty-four years ago, supports the majority's holding today. Interestingly, however, in that case, Justice Wheeler in dissent attempted to usher the court into the twentieth century: "A complaint, defective for lack of a jurisdictional fact, and capable of amendment, should not be dismissed, but the defect left to be met by plea or demurrer which admit of amendment. Our statutes of amendment, as construed by our

It is certainly true that once a court's subject matter jurisdiction is challenged a court cannot *proceed* on the merits until the issue of jurisdiction is resolved affirmatively. *Castro* v. *Viera*, 207 Conn. 420, 429, 541 A.2d 1216 (1988) ("the court must 'fully resolve [any jurisdictional challenges] before proceeding further with the case'"). Nevertheless, a court always has jurisdiction to determine whether it has jurisdiction. *Golden Hill Paugussett Tribe of Indians* v. *Southbury*, 231 Conn. 563, 570, 651 A.2d 1246 (1995). "A finding of jurisdiction is not a matter within the discretion of a court but a legal determination to be reached upon the facts and the pleadings." *Chrysler Credit Corp.* v. *Fairfield Chrysler-Plymouth, Inc.*, 180 Conn. 223, 230, 429 A.2d 478 (1980) (*Loiselle, J.*, concurring). As such, if there is a defect, mistake or informality in the pleading, which is determinative of the jurisdictional challenge, the plaintiff should be permitted to amend his or her complaint as allowed by the rules of practice. See Practice Book §§ 175 and 176.

Similarly, this court has held that when a court's subject matter jurisdiction is contingent on the finding of certain facts, the court must conduct an evidentiary hearing before dismissing the action for lack of jurisdiction. *Standard Tallow Corp.* v. *Jowdy*, 190 Conn. 48, 56, 459 A.2d 503 (1983) ("[w]hen issues of fact are necessary to the determination of a court's jurisdiction, due process requires that a trial-like hearing be held"). It should then follow that, if a court's subject matter jurisdiction is dependent upon a plaintiff's pleadings, and those pleadings are insufficient, a corrective

decisions, invite the amendment of every form of defect which will make a pleading good. We make no exception where the defects are jurisdictional." Id., 530.

The majority also relies on *Gurliacci* v. *Mayer*, 218 Conn. 531, 545, 590 A.2d 914 (1991), for its holding with respect to this issue. The statement cited by the majority, however, is *pure dicta* because in *Gurliacci*, the court determined that the trial court had subject matter jurisdiction. Id.

amendment to the pleading should be allowed before ruling on the motion to dismiss. Accordingly, I would decide the issue on appeal in light of the amended third party complaint[2] as the trial court did below.

Nevertheless, the initial third party complaint provides the trial court with jurisdiction. Pursuant to General Statutes § 4-61, "[a]ny person, firm or corporation which has entered into a contract with the state . . . for the design, construction, construction management, repair or alteration of any highway, bridge, building or other public works of the state . . . in the event of *any disputed claims under such contract* . . . [may] bring an action against the state to the superior court for the judicial district of Hartford-New Britain . . . ." (Emphasis added.) In this case, the relevant allegations in the initial third party complaint against the state are as follows: "To the extent [the] plaintiff [Standard Structural Steel, Inc. (Standard), a subcontractor[3]] incurred the damages and expenses as alleged, such damages and expenses were caused by [the] acts and/ or omissions of the State of Connecticut and not by any acts and/or omissions of [the defendants and third party plaintiffs Peabody International Corporation and Peabody, N.E., Inc. (collectively, Peabody), the general contractor]. . . . To the extent that [Peabody is] found responsible to Standard for all or part of the claims set forth in [the Federal Deposit Insurance Corporation's] Complaint asserting Standard's claims, [Peabody is] entitled under the law and under the terms and conditions of [its] Contract with the State of Connecticut to recover all such sums from the State of Connecticut Department of Transportation." In other words, Pea-

---

[2] See footnote 6 of the majority opinion.

[3] As noted in the majority opinion, "the Federal Deposit Insurance Corporation as the receiver of the New Connecticut Bank and Trust Company and the successor in interest to Standard, brought the underlying action against [the defendants-third party plaintiffs], seeking approximately $14.8 million in damages allegedly suffered by Standard."

body alleges that if it is held liable to Standard, then the state is liable for those damages sustained by Standard pursuant to Peabody's contract with the state. Albeit contingent, Peabody surely alleges a "disputed claim" with the state.

The majority narrowly construes the term "disputed claim," and adopts a definition that is not in the best interest of the state. Specifically, the majority holds that a "disputed claim" exists, thereby allowing a general contractor, who has contracted with the state and who is being sued by its subcontractor for damages for which the state would alternatively be responsible, to implead the state as a third party defendant, only if the general contractor admits liability in the action brought by the subcontractor. I disagree. This decision will likely encourage general contractors to increase their rates when contracting with the state, so that they may insure themselves against the burden the court now imposes.

The majority's holding places a general contractor in an unacceptable "catch-22" situation. The general contractor must either defend against the subcontractor with the hope that the statute of limitations provided for in § 4-61 does not expire before any adverse judgment is rendered against it, or admit liability to the subcontractor in the hope that it will be able to recover against the state.

"In construing a statute, common sense must be used and courts must assume that a reasonable and rational result was intended." *Kron* v. *Thelen*, 178 Conn. 189, 192, 423 A.2d 857 (1979); see also *State* v. *Roque*, 190 Conn. 143, 153, 460 A.2d 26 (1983) (" '[t]here is no canon against using common sense in construing laws as saying what they obviously mean' "). This principle is equally applicable to statutes that constitute a waiver of sovereign immunity. In this case, common sense dictates that the legislature did not intend to exclude

disputes involving contingent liability from the term "disputed claims" as it is used in § 4-61.

Accordingly, I dissent.