[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.]
MEMORANDUM OF DECISION ON DEFENDANTS' MOTION TO DISMISS
The issue presented by the defendants' motion to dismiss is whether the plaintiff's action is justiciable. The plaintiff's action concerns the zoning of land at and surrounding the Igor I. Sikorsky Memorial Airport (Sikorsky Airport). The plaintiff, the City of Bridgeport (Bridgeport), brought this action against the named defendants, hereinafter referred to as "Stratford", claiming that they failed to adopt airport zoning regulations as required by General Statutes § 15-91, and further failed to recognize Sikorsky Airport in the Town of Stratford's comprehensive zoning plan as required by General Statutes §8-2. Nicholas Mainero and Joseph J. Garamella, hereinafter referred to as the "intervening defendants", were subsequently added as party defendants. Hereinafter, Stratford, Mainero, and Garamella, will be referred to collectively as the "defendants".
Before addressing the issue of justiciability, it is necessary to comment on the procedural history of this case and the procedure the court employed prior to deciding the defendants' motion to dismiss
 I.
On February 2, 1989, Bridgeport presented to the court a verified complaint, together with applications for an order of notice, a temporary restraining order, and, an order to show cause. On February 2, 1989, the court, Thompson, J., issued an ex parte temporary restraining order that stated:
 It is Hereby Ordered that the Building Department of the Town of Stratford be directed not to issue building permits to National Properties, Inc. and/or Joseph J. Garamella and/or other entities for property [located within] the Airport Impact Zone (Exhibits "A" and "B") of the Igor I. Sikorsky Memorial Airport and that the Planning and Zoning Commission and Zoning Board be directed not to approve or certify any applications which will permit any building in the Airport Impact Zone (Exhibits "A" and "B") of the Igor I. Sikorsky Memorial Airport pending a hearing before this court. . . . CT Page 5644
Temporary Restraining Order, #102.[1] The court also issued an order that Stratford appear on March 13, 1989, and show cause why the temporary restraining order should not remain in force and effect. Further, because the temporary restraining order and ultimate relief requested by Bridgeport could affect property owners in the vicinity of Sikorsky Airport, the application for an order of notice was granted. The notice, which informed the public about the pendency of the action, was published in the Bridgeport Sunday Post on February 5 and February 12, 1989.
On or before February 8, 1989, a sheriff served the verified complaint, the temporary restraining order, the order to show cause, and, the order of notice, upon Stratford. The verified complaint, the temporary restraining order, the order to show cause, and, the order of notice, were filed with the court on February 15, 1989.
On August 1, 1994, the intervening defendants were added as party defendants. They claimed an interest in the controversy because they owned a parcel of land that was affected by the temporary restraining order.
On November 23, and again on December 5, 1994, the intervening defendants filed a claim to the trial list. On February 8, 1996, the intervening defendants filed another claim to the trial list, asserting that the case was privileged because a party to the action was sixty-five years of age or older. Trial was scheduled for July 31 through August 2, 1996.
On July 31, 1996, as court opened to begin the evidentiary hearing, the defendants orally moved to dismiss the plaintiff's action on the ground that it was nonjusticiable for two reasons. First, the defendants argued that intervening circumstances have rendered the plaintiff's action moot. Second, the defendants argued that the plaintiff's action involves a political question not susceptible to judicial redress without violating the constitutional principle of separation of powers.
Due to the late timing of the oral motion to dismiss, the court asked the defendants why they waited seven and one half years before they raised the political question doctrine as a ground for dismissal. The defendants responded that they only became aware of the political question quandary after the publication of Nielsen v. State, 236 Conn. 1, 670 A.2d 1288
(1996).[2] The defendants also stated that the perceived CT Page 5645 lateness of their motion to dismiss was irrelevant. The defendants argued that a motion to dismiss based upon the lack of subject matter jurisdiction could be raised at any time, and once raised, the court was required to stop everything and immediately decide the issue before proceeding. The defendants therefore argued that since the mootness doctrine and the political question doctrine are doctrines that implicate the court's subject matter jurisdiction, the court was required to decide the motion to dismiss immediately.
The plaintiff did not contest the defendants right to challenge the court's subject matter jurisdiction, despite the lateness of the motion. Instead, the plaintiff urged the court to go forward with the hearing while it considered the motion to dismiss. The plaintiff argued that it would be unfair to delay the hearing any longer and require the professional witnesses, who were in court with official documents as required by subpoena, to return another day. Further, the plaintiff argued that the court should proceed with the hearing because the testimonial and documentary evidence would assist the court in determining whether the action indeed was moot or involved a political question. Further, the plaintiff argued that during the hearing, it would have an opportunity, heretofore not provided due to the last second timing of the defendants' motion, to research the justiciability issue and submit a memorandum of law for the court's edification.
While there are limits to the notion that subject matter jurisdiction can be raised at any time; Upjohn Co. v. ZoningBoard of Appeals, 224 Conn. 96, 103-04, 616 A.2d 793 (1992); the limits did not apply in the present case, and thus, the defendants were entitled, as they claimed, to raise both the mootness doctrine and the political question doctrine just before trial. Taking into consideration, however, the defendants' last second attack upon the court's jurisdiction, the inadequate time afforded to the plaintiff to address an issue as complex as the political question doctrine, the interminable history of this lawsuit, and the presence, under subpoena, of several professional witnesses prepared to testify, the court concluded that judicial economy and the simple notion of fairness to the plaintiff and to the witnesses dictated that the hearing, scheduled for three days, should not be delayed any further. The defendants stated that they were prepared to proceed with the hearing; therefore, they would suffer no prejudice. The court therefore informed the parties that it would proceed with the CT Page 5646 hearing and take up the defendants' motion to dismiss after the three day hearing. The court informed the parties that it would entertain extended oral argument on the motion to dismiss after the conclusion of evidence on August 2, 1996. The court ordered Stratford to prepare a written motion to dismiss, and ordered the parties to prepare memoranda of law.
Stratford objected to the court hearing any evidence before ruling upon the motion to dismiss. The intervening defendants, however, agreed to the court's announced procedure as long as the court ruled upon the motion to dismiss before considering the merits of the plaintiff's case. The court noted Stratford's objection and proceeded to hear evidence.
On August 1, 1996, during the course of the hearing, Bridgeport filed a request for permission to file an amended complaint with the amended complaint attached thereto. On August 2, 1996, evidence concluded as scheduled. As directed, after the parties rested their cases, Stratford filed a written motion to dismiss. The court heard oral argument on the motion. At the conclusion of oral argument on the motion to dismiss, the court heard argument on the plaintiff's request for permission to file an amended complaint. Over Stratford's objection, the court granted the request for permission to file an amended complaint. The court granted Bridgeport's request to amend because the court was satisfied that there was a good faith argument by Bridgeport that the ordinance adopted by the Stratford Town Council failed to comply with the facial requirements of § 15-91, and thus, the original theory of the case remained unchanged, i.e., — that Stratford has failed to comply with § 15-91.
After the court granted the plaintiff's request to amend, Stratford filed a request for leave to amend its answer with the amended answer attached thereto. The proposed answer included three special defenses, and, a new counterclaim that was not previously raised by Stratford. The court granted Stratford's request to amend its answer in part. The court accepted the amended answer and the three special defenses, however, the court denied Stratford's request to set forth its new counterclaim. The court denied the new counterclaim because it raised issues that were not litigated during the trial. Stratford objected, noting that the court allowed Bridgeport to add for the first time the identical claim in count four of its amended complaint. The court did not have to consider Stratford's argument because the plaintiff volunteered to withdraw the fourth count of its amended CT Page 5647 complaint.
After the rulings upon the requests to amend, the intervening defendants renewed the motion to dissolve the temporary restraining order dated July 27, 1989. On August 3, 1996, the intervening defendants filed their answer to the amended complaint.
 II.
On August 20, 1996, eighteen days after the hearing concluded, our Supreme Court released its decision in FederalDeposit Ins. Corp. v. Peabody, N.E., Inc., 239 Conn. 93,680 A.2d 1321 (1996). Therein, the court iterated: "It is axiomatic that once the issue of subject matter jurisdiction is raised, it must be immediately acted upon by the court. . . . Whenever the absence of jurisdiction is brought to the notice of the court or tribunal, cognizance of it must be taken and the matter passed upon before it can move one further step in the cause; as any movement is necessarily the exercise of jurisdiction. . . . The point has been frequently made." (Citations omitted; internal quotation marks omitted.) Id., 99. Thus, it appears that the court should not have proceeded with the hearing before ruling on the defendants' motion to dismiss. Id. Likewise, it appears the court should not have granted the parties' requests to amend their pleadings before ruling on the motion to dismiss. Id. Despite the court's apparent procedural misstep, the analysis inFederal Deposit Ins. Corp. v. Peabody, N.E., Inc., supra,239 Conn. 100-05, demonstrates that the court's procedural error is not fatally incurable.[3] To correct this presumed procedural error, the court will review the defendants' motion to dismiss as directed to the allegations of the verified complaint. When interpreting the allegations of the verified complaint, the court will indulge every presumption favoring jurisdiction. AnnHoward's Apricots Restaurant, Inc. v. CHRO, 237 Conn. 209, 221,676 A.2d 844 (1996). If the defendants' motion to dismiss should have been granted on July 31, 1996, the court will so dismiss the action without considering the amended pleadings or the evidence at the hearing.
 III.
Bridgeport's verified complaint alleges that Bridgeport is the owner and operator of Sikorsky Airport, which encompasses approximately 800 acres of land located within the territorial CT Page 5648 limits of Stratford. The verified complaint alleges that Sikorsky Airport is not recognized within the Town of Stratford's comprehensive zoning plan. The verified complaint further alleges that there are no airport zoning regulations governing land use in the vicinity of Sikorsky Airport.
Bridgeport claims that Stratford is required by General Statutes § 8-2 to include Sikorsky Airport in the comprehensive zoning plan. Bridgeport also asserts that Stratford is required by General Statutes § 15-91 to adopt, administer, and enforce, airport zoning regulations that govern land use around Sikorsky Airport. Therefore, in the first count of the verified complaint, Bridgeport seeks a judgment declaring that Stratford is required by General Statutes § 15-91, to adopt airport zoning regulations, and, that Stratford has failed to include Sikorsky Airport in the comprehensive zoning plan as required by General Statutes § 8-2. In the second count, Bridgeport seeks a writ of mandamus directed to Stratford, compelling Stratford to adopt airport zoning regulations in accordance with § 15-91 and further compelling Stratford to revise the comprehensive zoning plan to provide for Sikorsky Airport in accordance with § 8-2. The second count also seeks a writ of mandamus ordering Stratford to create a joint airport zoning board in accordance with General Statutes § 15-92. In the third count, Bridgeport seeks a temporary restraining order, which was issued by the court on February 2, 1989, and still remains in effect today.
 IV.
In their motion to dismiss, the defendants claim that the plaintiff's action is moot and/or involves a political question, and thus, should be dismissed as nonjusticiable. "In the absence of a justiciable controversy, the courts have no [subject matter] jurisdiction." Kleinman v. Marshall, 192 Conn. 479, 484,472 A.2d 772 (1984). "The principles that underlie justiciability are well established. `Justiciability requires (1) that there be an actual controversy between or among the parties to the dispute . . . (2) that the interests of the parties be adverse . . . (3) that the matter in controversy be capable of being adjudicated by judicial power . . . and (4) that the determination of the controversy will result in practical relief to the complainant.' (Citations omitted.) State v. Nardini, 187 Conn. 109, 111-12, 445 A.2d 304
(1982); Pellegrino v. O'Neill, 193 Conn. 670, 674, 480 A.2d 476, cert. denied, 469 U.S. 875, 105 S.Ct. 236, 83 L.Ed.2d 176
CT Page 5649 (1984)." Nielsen v. State, supra, 236 Conn. 6-8. The mootness doctrine is a hybrid of the first and fourth requirements of justiciability. See Domestic Violence Services of Greater NewHaven v. FOIC, 240 Conn. 1, 7, ___ A.2d ___ (1997) (the mootness doctrine ensures that an actual controversy exists); GraceCommunity Church v. Bethel, 30 Conn. App. 765, 769, 622 A.2d 591
(courts will not decide moot questions, the determination of which no practical relief can follow), cert. denied226 Conn. 903, 625 A.2d 1375, cert. denied ___ U.S. ___, 114 S.Ct. 383,126 L.Ed.2d 332 (1993). The political question doctrine is equated with the third requirement. See Nielsen v. State, supra,236 Conn. 7 ("The third requirement for justiciability, the political question doctrine, is based on the principle of separation of powers."). The defendants' claims under each doctrine will be addressed separately.
 V.
"A case becomes moot when due to intervening circumstances a controversy between the parties no longer exists.'" (Internal quotation mark omitted.) Domestic Violence Services of GreaterNew Haven v. FOIC, supra, 240 Conn. 7. A case is moot when the court can no longer grant any of the relief requested. Koennickev. Maiorano, 43 Conn. App. 1, 32 n. 26, 682 A.2d 1046 (1996).
The defendants argue that the case is moot because the relief requested has been accomplished. In support, the defendants contend that on June 10, 1996, the Stratford Town Council adopted a town ordinance that established airport zoning as required by General Statutes § 15-91. Further, the defendants contend that Stratford has voluntarily referenced Sikorsky Airport in its comprehensive zoning plan. The defendants therefore argue that the case is moot because the relief sought has already been accomplished.
In response, the plaintiff argues that the relief requested has not been accomplished. In support, the plaintiff contends that, as drafted, the ordinance is not enforceable, and thus, it fails to establish the airport zoning regulations unconditionally required by General Statutes § 15-91. The plaintiff further contends that Stratford has only partially recognized Sikorsky Airport in the comprehensive zoning plan, even though the plaintiff claims that § 8-2 requires Stratford to recognize all of Sikorsky Airport in the zoning plan. The plaintiff therefore argues that its action is not moot as claimed by the CT Page 5650 defendants.
What is clear to the court is that based upon the bare assertions made by the parties while arguing the motion to dismiss, a longstanding, heated controversy exists between the parties in this case. In the end, the evidence may not sustain the plaintiff's claims, but, the claims, on their face, appear meritorious. The problem, both with deciding the issue of mootness, and, as will be explained infra, with deciding the issue of the political question doctrine, is that the evidence required to decide the mootness issue is substantially the same evidence that will be presented at a hearing on the merits. The court therefore rejects the defendants' claim that the plaintiff's action should be dismissed on the ground that it is moot. Only a full hearing with the evidence will answer that question. If the evidence reveals that Stratford has indeed provided the relief requested, the court will dismiss the action.
 VI.
"The third requirement for justiciability, the political question doctrine, is based on the principle of separation of powers. Nielsen v. Kezer, 232 Conn. 65, 75, 652 A.2d 1013 (1995);Pellegrino v. O'Neill, supra, 680. `The characterization of [an issue] as political is a convenient shorthand for declaring that some other branch of government has constitutional authority over the subject matter superior to that of the courts.' Pellegrino v.O'Neill, supra, 680. `The fundamental characteristic of a political question, therefore, is that its adjudication would place the court in conflict with a coequal branch of government in violation of the primary authority of that coordinate branch.Baker v. Carr, [369 U.S. 186, 217, 82 S.Ct. 691, 7 L.Ed.2d 663
(1962)].' Nielsen v. Kezer, supra, 74.
"`Whether a controversy so directly implicates the primary authority of the legislative or executive branch, such that a court is not the proper forum for its resolution, is a determination that must be made on a case-by-case inquiry.' Id.,
74-75. `Prominent on the surface of any case held to involve a political question is found a textually demonstrable constitutional commitment of the issue to a coordinate political department; or a lack of judicially discoverable and manageable standards for resolving it; or the impossibility of deciding without an initial policy determination of a kind clearly for nonjudicial discretion; or the impossibility of a court's CT Page 5651 undertaking independent resolution without expressing lack of the respect due coordinate branches of government; or an unusual need for unquestioning adherence to a political decision already made; or the potentiality of embarrassment from multifarious pronouncements by various departments on one question. Unless one of these formulations is inextricable from the case at bar, there should be no dismissal for nonjusticiability on the ground of a political question's presence.' Baker v. Carr, supra,369 U.S. 217; see Fonfara v. Reapportionment Commission, 222 Conn. 166,184-85, 610 A.2d 153 (1992)." Nielsen v. State, supra,236 Conn. 6-8.
Whether a case is nonjusticiable as a political question is one of the more difficult jurisdictional issues presented. Indeed, even the learned justices of our Supreme Court have reached differing conclusions upon review of the same case. Compare, e.g., Pellegrino v. O'Neill, supra, 193 Conn. 670
(majority opinion) with Pellegrino v. O'Neill, supra, 689-95 (dissenting opinion); see also Sheff v. O'Neill, 238 Conn. 1, 13,678 A.2d 1267 (1996) (where the court conceded that its "[e]xisting precedents describe the uneasy line that distinguishes between cases that are justiciable and cases that are not."). Notwithstanding the noted difficulty, the court's standard to review the defendants' motion is clear: Unless one of the six enumerated considerations in Nielsen v. State "is inextricable from the case at bar, there should be no dismissal for nonjusticiability on the ground of a political question's presence.'" Nielsen v. State, supra, 236 Conn. 6-8. Moreover, "[c]onsiderations of justiciability must be balanced against the principle that every presumption is to be indulged in favor of subject matter jurisdiction." Sheff v. O'Neill, supra,238 Conn. 15.
The defendants argue that the case involves a political question which cannot be adjudicated by judicial authority without violating the principle of separation of powers. The defendants claim that General Statutes § 15-94 indicates that the state legislature intended to commit the authority to adopt airport zoning regulations to the Town of Stratford's legislative body. The defendants claim that where the duty imposed upon the legislative body involves discretion, the court cannot mandate the performance of that duty, or, act as the legislature and fulfill that duty. The defendants therefore argue, citing Nielsenv. State, supra, 236 Conn. 1, that the plaintiff's action should be dismissed because it involves a political question. CT Page 5652
The plaintiff states that its action does not involve a political question. First, the plaintiff notes that co-equal branches of government are not present in this case. Therefore, the plaintiff argues that the court's adjudication of this matter will not violate the principle of separation of powers. Second, the plaintiff notes that § 15-91 was enacted approximately 37 years before the plaintiff brought this action. Therefore, the plaintiff argues that Stratford has abused any discretion vested in it by the legislature, and thus, the case is ripe for judicial redress. See Nielsen v. State, supra 236 Conn. 16 (Berdon, J., concurring) (reasoning that a court could review a legislature's failure to perform a required discretionary act if the legislature was provided enough time to exercise its discretion). Lastly, the plaintiff contends that the issue before the court concerns the limitation of hazards to the public, hazards expressly found dangerous to the public by the our Legislature. Without court intervention, the plaintiff contends the public is at risk of harm. The plaintiff argues that the action does not involve a political question, but a question of public safety and public policy. Therefore, the plaintiff argues that its case does not involve a political question.
The defendants seek a resolution of the political question issue before a hearing on the merits. Notwithstanding, upon review of the six political question considerations enumerated inNielsen v. State, supra, 236 Conn. 7-8, the court concludes that it "would be much better advised" after a full hearing to determine whether the plaintiff's action inextricably involved any of the six enumerated considerations. See Pellegrino v.O'Neill, supra, 193 Conn. 692-93 (Peters, J., dissenting). The court notes that, at this point, the plaintiff's action, as set forth in its amended complaint, is grounded in a belief, albeit a belief not shared by the defendants, that § 15-91 requires the defendants to enact airport zoning regulations designed to protect general, as opposed to local, public interests identified by our state legislature. Hence, as pleaded, the plaintiff's action requires the interpretation of statutes and subsequent determinations of whether certain conduct violates the interpreted statutory law. These are judicial tasks, and thus, the issues raised by the plaintiff's action do not appear to be textually committed by our constitution to a coordinate political department. Nor is it impossible to decide the raised issues without an initial, nonjudicial, policy determination. The legislature has already identified the public interest it seeks CT Page 5653 to protect through airport zoning regulations. See General Statutes § 15-89 (public interest identified). Finally, it does not appear, at this time, that the plaintiff's action inextricably involves any of the remaining considerations.
Nevertheless, the court is mindful that what appears at first blush to be justiciable may prove after a full hearing to inextricably involve one of the enumerated six considerations. The court will therefore exercise its jurisprudential prudence and await the findings of fact and conclusions of law before deciding whether the case inextricable involves a political question consideration. If a political question consideration is inextricable from the plaintiff's action, it will be dismissed.
 VII.
In conclusion, the court iterates that the evidence required to determine the defendants' motion to dismiss is the same evidence that will be presented at trial. The issue presented, whether the plaintiff's action is justiciable, is not disposable by way of a brief evidentiary hearing, such as those hearings often conducted to determine if a court has personal jurisdiction over a defendant. After a full hearing, with findings of fact and conclusions of law, the court will dismiss the action sua sponte if the evidence proves that the relief requested has been realized or if the action proves to inextricably involve a political question. The court therefore denies the defendants' motion to dismiss.
SO ORDERED:
JOHN W. MORAN, J. JUDGE OF THE SUPERIOR COURT