[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.] MEMORANDUM OF DECISION RE: DEFENDANT KINNEY'S MOTION TO DISMISS
The plaintiff, David Shepard, alleges the following facts in his revised amended complaint against the defendants, High Sheriff Frank J. Kinney and Deputy Sheriff Brian Hobart. On September 22, 1998, Hobart served a capias mittimus on the plaintiff at his residence in Woodbury, Connecticut. Hobart took the plaintiff into physical custody and presented him to the Superior Court for the judicial district of Waterbury. Judge James G. Kenefick, Jr. released the plaintiff without bond based on the improper circumstances of his detention. As a result of the alleged false arrest and imprisonment, the plaintiff suffered injury to his reputation. Furthermore, the defendant was humiliated and embarrassed by being taken into custody at his home and presented in chains before the Superior Court.
On March 2, 2001, the plaintiff filed the operative six count revised CT Page 12052 amended complaint. Counts one through three allege negligence and false imprisonment against Hobart. Count four alleges negligence against Kinney. Count five alleges a violation of General Statutes § 6-32
against Hobart. Count six alleges Hobart and Kinney violated both thefourth amendment to the United States constitution and Article first, § 9, of the constitution of Connecticut.
On November 6, 2000, Kinney filed the present motion to dismiss counts four and six of the plaintiff's revised amended complaint on the grounds that the claims against him are barred by the doctrine of sovereign immunity and General Statutes § 4-165. Kinney attached a memorandum of law to his motion. The plaintiff timely filed an objection to the motion along with a request for an extension of time to file a memorandum. The extension was granted and the plaintiff filed his memorandum in opposition along with affidavits of Marshal Jerry Buswell, David Shepard and Linda Ives on January 19, 2001. The court heard oral argument at short calendar on June 12, 2001, and now issues this memorandum of decision.
 II. STANDARD OF REVIEW
"The motion to dismiss shall be used to assert . . . lack of jurisdiction over the subject matter. . . ." Shay v. Rossi, 253 Conn. 134,140 n. 8, 749 A.2d 1147 (2000). "[T]he doctrine of sovereign immunity implicates subject matter jurisdiction and is therefore a basis for granting a motion to dismiss." (Internal quotation marks omitted.)Federal Deposit Ins. Corp. v. Peabody, N.E., Inc., 239 Conn. 93, 99,680 A.2d 1321 (1996); see also Shay v. Rossi, supra. "[I]n ruling upon whether a complaint survives a motion to dismiss, a court must take the facts to be those alleged in the complaint, including those facts necessarily implied from the allegations, construing them in a manner most favorable to the pleader." (Internal quotation marks omitted.)Lawrence Brunoli, Inc. v. Branford, 247 Conn. 407, 410-11, 722 A.2d 271
(1999). "The motion to dismiss . . . admits all facts which are well pleaded, invokes the existing record and must be decided upon that alone. . . . Where, however, as here, the motion is accompanied by supporting affidavits containing undisputed facts, the court may look to their content for determination of the jurisdictional issue and need not conclusively presume the validity of the allegations of the complaint." Ferreira v. Pringle, 255 Conn. 330,346-47, 766 A.2d 400 (2001).
In his memorandum of law supporting the motion, Kinney argues that the plaintiff's claims against him in his official capacity are barred by the CT Page 12053 doctrine of sovereign immunity because he was acting as an agent of the state. Alternatively, Kinney argues that the plaintiff's claims against him in his individual capacity are barred by § 4-165[1] because the arrest was not wanton, reckless or malicious. As such, Kinney contends the court lacks subject matter jurisdiction. The plaintiff argues in opposition that Kinney is not protected by the doctrine of sovereign immunity because the practice of New Haven county deputies engaging in service of process of individuals outside their county exceeds their statutory authority and such conduct is imputed on Kinney. In addition, the plaintiff argues that § 4-165 is not applicable because the New Haven county deputies regularly engaging in service of process outside of their jurisdiction constitutes wanton, reckless or malicious conduct.
"Our precedents establish that, where a state official is sued in both her official and individual capacities, if sovereign immunity does not apply to the claim against her in her official capacity, the statutory immunity may then apply to the claim against her in her individual capacity. Thus, before determining whether and to what extent the defendants are shielded by the statutory immunity provided by § 4-165, it is appropriate to determine whether the claims against them are barred by the common-law doctrine of sovereign immunity." Shay v. Rossi, supra,253 Conn. 162-63.
 A Sovereign Immunity
"We have . . . recognized that because the state can act only through its officers and agents, a suit against a state officer concerning a matter in which the officer represents the state is, in effect, against the state. . . . In its pristine form the doctrine of sovereign immunity would exempt the state from suit entirely, because the sovereign could not be sued in its own courts and there can be no legal right as against the authority that makes the law on which the right depends. . . . This absolute bar of actions against the state has been greatly modified both by statutes effectively consenting to suit in some instances as well as by judicial decisions in others.
"It does not necessarily follow, however, that every action in which state officials or members of state agencies are named defendants and designated by official titles should be treated as an action against the state such as to clothe the defendants with immunity from suit . . . Sovereign immunity does not bar suits against state officials acting in excess of their statutory authority or pursuant to an unconstitutional statute. CT Page 12054
"In those cases in which it is alleged that the defendant officer is proceeding . . . in excess of his statutory authority, the interest in the protection of the plaintiff's right to be free from the consequences of such action outweighs the interest served by the sovereign immunity doctrine . . . In such instances, the need to protect the government simply does not arise and the government cannot justifiably claim interference with its functions. . . . Where [however] no substantial claim is made that the defendant officer is acting pursuant to an unconstitutional enactment or in excess of his statutory authority, the purpose of the sovereign immunity doctrine requires dismissal of the suit for want of jurisdiction." (Citations omitted; internal quotation marks omitted.) Id., 168.
"[I]n order to overcome sovereign immunity, the [plaintiff] must do more than allege that the [defendant's] conduct was in excess of [his] statutory authority; [he] also must allege or otherwise establish facts that reasonably support those allegations." Id., 174-75. The Supreme Court has declined to define, with any degree of specificity, the line distinguishing conduct that is within the normal scope of a defendant's statutory authority and that which is outside it. Instead the Supreme Court determined the line lies somewhere between two poles: (1) conduct so far outside the normal duties of a high sheriff that he was in effect not acting as a sheriff; and (2) conduct that was unauthorized by a process of statutory interpretation. See Id., 172. Shay concluded the analysis requires determining whether "the facts of this case bring it sufficiently outside the normal scope of the defendant's statutory authority to invoke the doctrine." Id.
In the present case, the plaintiff argues that Kinney acted outside the scope of his authority pursuant to General Statutes § 6-31[2] when he directed his deputy to serve process on an individual outside his county. The revised amended complaint states that the defendant was served at his home in Woodbury, Connecticut by Hobart, the deputy sheriff for New Haven county. (See Revised Amended Complaint, March 2, 2001, Count One, ¶¶ 1-2.) It also states the "Connecticut General Statutes § 6-1 defines Woodbury as part of Litchfield County . . ., [therefore], the actions of Sheriff Hobart were beyond his statutory authority." (Revised Amended Complaint, Count One, ¶¶ 3-4.) Furthermore, the revised amended complaint states that Kinney "failed to supervise, train or discipline Mr. Hobart as to the statutory limits of the deputy's authority." (Revised Amended Complaint, Count Four, ¶ 3.) The court finds that because § 6-31 is clear and unambiguous with regard to the sheriff's authority, and because Kinney's actions were so obviously outside the scope of this statutory authority, the allegations contained in the revised amended complaint bring the case "sufficiently outside the scope of the defendant's statutory authority." Id. CT Page 12055 Therefore, the plaintiff's claims against Kinney are not barred by the doctrine of common law sovereign immunity.
 B General Statutes § 4-165
Having concluded that the plaintiff's claims against the defendant in his official capacity are not barred by sovereign immunity, we turn to the question of whether his claims against Kinney in his individual capacity are barred by the statutory immunity provided by § 4-165. Section 4-165 provides in pertinent part: "No state officer or employee shall be personally liable for damage or injury, not wanton, reckless ormalicious, caused in the discharge of his duties or within the scope of his employment. . . ." (Emphasis added.) But for the exception in the statute for wanton, reckless or malicious conduct, the defendant would be statutorily immune for his conduct in this case. The question is, therefore, whether his conduct comes within that exception.
In Shay v. Rossi, the Supreme Court defined "wanton, reckless or malicious" as it is used in § 4-165 according to the common law standard. The court stated that "[i]n order to establish that the defendants' conduct was wanton, reckless, wilful, intentional and malicious, the plaintiff must prove, on the part of the defendants, the existence of a state of consciousness with reference to the consequences of one's acts. . . . [Such conduct] is more than negligence, more than gross negligence. . . . [I]n order to infer it, there must be something more than a failure to exercise a reasonable degree of watchfulness to avoid danger to others or to take reasonable precautions to avoid injury to them. . . . It is such conduct as indicates a reckless disregard of the just rights or safety of others or of the consequences of the action. . . . [In sum, such] conduct tends to take on the aspect of highly unreasonable conduct, involving an extreme departure from ordinary care, in a situation where a high degree of danger is apparent." (Internal quotation marks omitted.) Shay v. Rossi, supra, 253 Conn. 181, citing, Elliott v. Waterbury, 245 Conn. 385, 415, 715 A.2d 27 (1998).
In the present case, the plaintiff has submitted several affidavits with his memorandum in opposition of the motion to dismiss. The plaintiff's affidavit avers that on several occasions prior to the serving of the capias on September 22, 1998, Hobart came to his place of employment and called his home. More importantly, the affidavit of Marshal Jerry Buswell avers that for over 30 years the New Haven county sheriff's office knowingly served process in Litchfield county. These practices, if true, are more than negligent conduct on behalf of Kinney; they amount to a knowing, reckless disregard for the just rights of the CT Page 12056 citizens of Litchfield county.
Accordingly, viewing the record in the light most favorable to the plaintiff, the court finds that the defendant acted wantonly, recklessly or maliciously. As such, the motion to dismiss is denied because the plaintiff's revised amended complaint is not barred by § 4-165.
By the Court,
Joseph W. Doherty, Judge