******************************************************

The "officially released" date that appears near the beginning of each opinion is the date the opinion will be published in the Connecticut Law Journal or the date it was released as a slip opinion. The operative date for the beginning of all time periods for filing postopinion motions and petitions for certification is the "officially released" date appearing in the opinion. In no event will any such motions be accepted before the "officially released" date.

All opinions are subject to modification and technical correction prior to official publication in the Connecticut Reports and Connecticut Appellate Reports. In the event of discrepancies between the electronic version of an opinion and the print version appearing in the Connecticut Law Journal and subsequently in the Connecticut Reports or Connecticut Appellate Reports, the latest print version is to be considered authoritative.

The syllabus and procedural history accompanying the opinion as it appears on the Commission on Official Legal Publications Electronic Bulletin Board Service and in the Connecticut Law Journal and bound volumes of official reports are copyrighted by the Secretary of the State, State of Connecticut, and may not be reproduced and distributed without the express written permission of the Commission on Official Legal Publications, Judicial Branch, State of Connecticut.

******************************************************

136 FIELD POINT CIRCLE HOLDING
COMPANY, LLC *v.* ALEXANDER
RAZINSKI ET AL.
(AC 37213)

Gruendel, Sheldon and Schuman, Js.

*Argued October 20, 2015—officially released January 12, 2016*

(Appeal from Superior Court, judicial district of
Stamford-Norwalk, Housing Session at Norwalk,
Rodriguez, J.)

*David A. Slossberg*, with whom was *Meaghan M.
Ehrhard*, for the appellants (named defendant et al.).

*Stephen G. Walko*, with whom, on the brief, was
*Andrea C. Sisca*, for the appellee (plaintiff).

*Opinion*

SCHUMAN, J. The issue on appeal is whether the trial court erred when it rendered a judgment of possession for the plaintiff, 136 Field Point Holding Company, LLC,[1] in a summary process action without first conducting the hearing prescribed by General Statutes § 47a-26b (d). We conclude that the court erred and, accordingly, reverse the judgment of the court.

The defendants Alexander Razinski and Tanya Razinski appeal from the judgment of possession. On appeal, they claim that the judgment was ultra vires because rendering it violated § 47a-26b (d).[2] The plaintiff responds that the self-executing provision of § 47a-26b (d) did not apply at the phase of the proceedings in which the court rendered a judgment of possession. The plaintiff also claims that this court lacks subject matter jurisdiction over the appeal because it is moot. We agree with the defendants.

The record reveals the following relevant facts and procedural history. The plaintiff and defendants entered into a contractual relationship governed by a document called the "Master Agreement." The Master Agreement states that "[the plaintiff] shall lease [136 Field Point Circle, Greenwich (property)] to the [defendants] pursuant to the terms and conditions of this Agreement and the residential lease agreement between the [plaintiff] and the [defendants] . . . ." The Master Agreement also states that "[the plaintiff] hereby grants to the [defendants] a call option . . . to purchase the Property . . . ." The Master Agreement also provides specific details regarding the defendants' lease of the property, including a requirement that the plaintiff give the defendants sixty days written notice as to whether the plaintiff would grant a six month extension of the lease. Finally, the Master Agreement provides that "[t]his agreement and the transaction contemplated hereby shall be governed by and construed in accordance with the domestic laws of the state of New York . . . . [A]ny and all proceedings arising out of or relating to this Agreement and the transactions contemplated hereby shall be commenced and prosecuted exclusively in . . . the state of New York . . . ." (Emphasis omitted.)

Following the Master Agreement, the parties entered into a written lease for the property in question, a luxury home in Greenwich. The lease provides that it is "Exhibit B to a certain Master Agreement" between the parties and that "[a]ll terms, conditions and provisions contained in the Master Agreement and relating to the lease of the dwelling are hereby incorporated into this lease by reference and made a part hereof. If any terms, conditions or provisions in this lease are in conflict with or inconsistent with the terms, conditions or provisions of the Master Agreement, the Master Agreement

shall supersede and control." (Emphasis omitted.)

The lease also sets forth the lease term of approximately one year, subject to the optional six month extension. The original lease term is specified as running from May, 2012 to June 30, 2013. The lease sets rent at $25,000 per month but allows the tenants to defer up to $20,000 of that sum each month, to be paid in full at the end of the lease term.

The lease expired by its terms on June 30, 2013. The plaintiff did not initially grant the six month extension contemplated by the Master Agreement, although it ultimately did so, thus extending the lease until November 17, 2013. On July 3, 2013, the defendants commenced an action (New York action) in the Supreme Court of New York, County of New York (New York court). In the New York action, the defendants sought numerous forms of relief, including an injunction to prevent the plaintiff from evicting them from the property, a decree of specific performance requiring the plaintiff to extend the term of the lease, and various declaratory judgments to the effect that the defendants are equitable mortgagors of the property, with attendant possessory rights therein. The plaintiff asserted a defense and several counterclaims. The plaintiff moved for summary judgment, and, on October 28, 2014, the New York court dismissed several counts of the defendants' complaint, determined that the defendants held no equitable interest in the property, granted the plaintiff's motion for summary judgment as to one count of its counterclaim for ejectment, and held that the plaintiff was entitled to a judgment of possession.[3] The defendants have appealed that judgment.

While the New York action was pending, on December 2, 2013, the plaintiff served a notice to quit possession on the defendants. On December 26, 2013, the plaintiff brought a summary process action in the trial court, seeking to regain possession of the premises and to evict the defendants. On January 23, 2014, the plaintiff moved for an order requiring the defendants to make use and occupancy payments. On March 13, 2014, the court granted this motion and set the payments at $25,000 per month, each payment due on the twentieth day of each month. The court also issued the following order: "If you do not make a payment in accordance with this order, you will receive in the mail an order from the clerk to file your answer to the complaint. If you do not file your answer within four days from the date that the clerk's order was mailed, judgment will be entered for the plaintiff. If you do file your answer within four days from the date the clerk's order was mailed, the clerk will set this matter down for a hearing not less than three or more than seven days after your answer and the plaintiff's reply, if any, are filed."[4] On March 25, 2014, the defendants filed an answer with fourteen special defenses and a two

count counterclaim.

The parties do not dispute that the defendants made their use and occupancy payments in March, April, and May, 2014, but did not make one in June, 2014. Accordingly, on July 11, 2014, the plaintiff filed its first of two motions for a judgment of possession. On July 17, 2014, the defendants made two use and occupancy payments of $25,000 each. On July 22, 2014, the court denied the plaintiff's first motion for a judgment of possession. The parties also do not dispute that the defendants did not make a use and occupancy payment in August, 2014. Accordingly, on August 21, 2014, the plaintiff again moved for a judgment of possession, which the court granted on September 4, 2014. In its order, the court wrote: "Defendant failed to comply with court order of March 13, 2014." The court did not hold a hearing on the plaintiff's motion for a judgment of possession. Following a court order, the defendants posted a bond of $350,000, and they still possess the property.

Additional facts and procedural history will be set forth where necessary.

I

Before we address the defendants' claims, we must determine whether this case is moot. "Mootness is a question of justiciability that must be determined as a threshold matter because it implicates [this] court's subject matter jurisdiction . . . ." (Internal quotation marks omitted.) *Putman* v. *Kennedy*, 279 Conn. 162, 168, 900 A.2d 1256 (2006). The plaintiff claims that the case is moot because (A) the lease has expired by its terms; and (B) the judgment of the New York court already entitles the plaintiff to possession, so practical relief for the defendants is impossible in this appeal. We disagree.

A

The plaintiff first argues that this case is moot because the lease between the plaintiff and the defendants has expired by its terms, rendering practical relief impossible. The defendants counter that practical relief is possible because a hearing on the merits would give them an opportunity to argue that they have a legal right to possess the property under the terms of their complex transaction. The defendants also point out that they have posted a bond pending appeal and that they remain in possession of the premises, both of which they could lose should this court decide against them. We agree with the defendants.

"When, during the pendency of an appeal, events have occurred that preclude an appellate court from granting any practical relief through its disposition of the merits, a case has become moot. . . . It is a well-settled general rule that the existence of an actual controversy is an essential requisite to appellate jurisdiction; it is not the province of appellate courts to decide

moot questions, disconnected from the granting of actual relief or from the determination of which no practical relief can follow." (Internal quotation marks omitted.) *Peterson* v. *Robles*, 134 Conn. App. 316, 320–21, 39 A.3d 763 (2012).

As the plaintiff points out, this court has held that an appeal from a judgment of possession in a summary process action can become moot once the lease expires. *Sosnowski* v. *Monti*, 36 Conn. App. 941, 942, 651 A.2d 1334 (1995); *Evergreen Manor Associates* v. *Farrell*, 9 Conn. App. 77, 78, 515 A.2d 1081 (1986). In *Evergreen Manor Associates*, however, the tenant already had been evicted by the time the appeal was decided. *Evergreen Manor Associates* v. *Farrell*, supra, 78. The court in that case highlighted this fact, in addition to the expiration of the lease, when explaining why the case was moot. Id.

Similarly, in *Cheshire* v. *Lewis*, 75 Conn. App. 892, 892–93, 817 A.2d 1277, cert. denied, 264 Conn. 905, 826 A.2d 177 (2003), which concerned an oral, month-to-month lease, this court emphasized that it was the fact that the defendant no longer possessed the premises that made the appeal moot. The same was true in *Castle Apartments, Inc.* v. *Pichette*, 34 Conn. App. 531, 533, 642 A.2d 57 (1994). That court noted that "[w]e have consistently held that an appeal from a summary process judgment becomes moot where, at the time of the appeal, the defendant is no longer in possession of the premises." Id.

By contrast, in *Western Boot & Clothing Co.* v. *L'Enfance Magique, Inc.*, 81 Conn. App. 486, 488 n.3, 840 A.2d 574, cert. denied, 269 Conn. 903, 852 A.2d 737 (2004), this court noted that "[a]lthough the term of the lease expired during the pendency of this appeal, the defendant remains in possession of the premises. The appeal, therefore, is not moot." In sum, these cases hold that the expiration of a lease moots an appeal in a summary process action only if the defendant no longer possesses the property.

In this case, the defendants still possess the property. They also have posted a bond of $350,000. Practical relief therefore remains available because a hearing on the merits of the appeal could result in the defendants' retaining possession, recovering their bond, or both.

### B

The plaintiff next argues that this appeal is moot because the New York court, in ruling upon the plaintiff's summary judgment motion in the New York action, concluded that the plaintiff was entitled to possess the property. The plaintiff argues that, because the trial court determined that New York law governs the defendants' rights under the Master Agreement, and because the New York court has determined that the defendants have no rights in the property and that the plaintiff is

entitled to immediate possession, no practical relief is possible in this appeal. We again disagree.

The plaintiff is mistaken that the trial court determined that New York law governs the defendants' rights in the property under the Master Agreement. The closest that the trial court came to the issue was to note, in an order denying the plaintiff's motion in limine to exclude the Master Agreement, that "portions of the Master Agreement are relevant to the eviction, special defenses and counterclaim." The trial court did not make any conclusions about the construction or validity of the choice of law and forum selection clauses in the Master Agreement, or about the application of New York law to the present case.

The plaintiff does not use the words "res judicata" or "full faith and credit" in its argument but it implies that the New York court's judgment should have a similar preclusive force on the trial court. Rather than arguing that the trial court must recognize and enforce the New York court's judgment on the issues in this summary process action, the plaintiff argues that the existence of the New York judgment makes practical relief impossible, and the appeal moot.

"[T]he applicability of res judicata . . . presents a question of law over which we employ plenary review." *Weiss* v. *Weiss*, 297 Conn. 446, 458, 998 A.2d 766 (2010). Res judicata is "applicable only to *later*, independent proceedings . . . ." (Emphasis added.) 50 C.J.S. 240, Judgments § 926 (2009). "The doctrine of res judicata provides that [a] valid, final judgment rendered on the merits by a court of competent jurisdiction is an absolute bar to a *subsequent* action between the same parties . . . upon the same claim or demand." (Emphasis added; internal quotation marks omitted.) *Weiss* v. *Weiss*, supra, 459. "The judicial [doctrine] of res judicata . . . [is] based on the public policy that a party should not be able to *relitigate* a matter which it *already has had* an opportunity to litigate." (Emphasis added; internal quotation marks omitted.) *Fink* v. *Golenbock*, 238 Conn. 183, 192, 680 A.2d 1243 (1996).

The problem with the plaintiff's argument is that it attempts to give retrospective instead of merely prospective preclusive force to the New York judgment. The judgment in the trial court preceded that in the New York action; the former was rendered on September 4, 2014, and the latter on October 28, 2014. Res judicata is therefore inapplicable, which in this case also answers the plaintiff's mootness argument.[5] Practical relief remains possible because it is not yet clear what the effect of the New York judgment, or of the forum selection and choice of law clauses in the Master Agreement, will have in the litigation to follow. The case is not moot.

II

Having resolved the jurisdictional issue of mootness, we turn to the merits of the appeal. The defendants claim that the court erred by rendering a judgment of possession without conducting the hearing required by § 47a-26b (d). Specifically, the defendants argue that (1) because they had already answered the complaint when the plaintiff moved for a judgment of possession, § 47a-26b (d) required the court to order a hearing before rendering such a judgment; (2) a hearing is the exclusive remedy under § 47a-26b for failure to make use and occupancy payments when a defendant has filed an answer; and (3) the court had no authority to render judgment under § 47a-26b for failure to make a use and occupancy payment. The plaintiff responds that the self-executing provision of § 47a-26b (d) did not apply at the phase of the proceedings in which the court rendered a judgment of possession, and that a judgment of possession was the only effective remedy available to the plaintiff for the defendants' failure to make use and occupancy payments. We agree with the defendants and therefore reverse the judgment.

"Issues of statutory construction raise questions of law, over which we exercise plenary review. . . . The process of statutory interpretation involves the determination of the meaning of the statutory language as applied to the facts of the case, including the question of whether the language does so apply. . . .

"When construing a statute, [o]ur fundamental objective is to ascertain and give effect to the apparent intent of the legislature. . . . In other words, we seek to determine, in a reasoned manner, the meaning of the statutory language as applied to the facts of [the] case, including the question of whether the language actually does apply. . . . In seeking to determine that meaning, General Statutes § 1-2z directs us first to consider the text of the statute itself and its relationship to other statutes. If, after examining such text and considering such relationship, the meaning of such text is plain and unambiguous and does not yield absurd or unworkable results, extratextual evidence of the meaning of the statute shall not be considered. . . . The test to determine ambiguity is whether the statute, when read in context, is susceptible to more than one reasonable interpretation." (Internal quotation marks omitted.) *State* v. *Fernando A.*, 294 Conn. 1, 13–14, 981 A.2d 427 (2009).

Section 47a-26b (d) provides: "If the defendant fails to make [use and occupancy] payments as ordered, the clerk shall, immediately and without the filing of a motion, order the defendant to file his answer and, if the defendant fails to do so within four days of the mailing of such order, judgment shall forthwith be entered for the plaintiff. If the defendant files an answer within such four-day period, the clerk shall set such matter down for hearing not less than three nor more

than seven days after such answer and reply, if any, are filed."

Section 47a-26b (d) does not directly address the sequence of events now before this court, in which the defendants already had filed their answer to the summary process complaint months before they failed to make timely use and occupancy payments.[6] Instead, the statute considers two scenarios and prescribes a course of action for each. In the first scenario, the defendant does not make a use and occupancy payment, the clerk then orders the defendant to file his answer, and the defendant does so within four days of the mailing of that order. In this first scenario, the clerk is supposed to "set such matter down for hearing . . . ." General Statutes § 47a-26b (d). The second scenario is the same as the first, except that the defendant does not file an answer as ordered within four days. In this second scenario, the defendant defaults, and judgment is rendered for the plaintiff. General Statutes § 47a-26b (d). Both scenarios presume that the defendant has not yet filed an answer at the time he misses a use and occupancy payment. Neither specifically contemplates the possibility that the defendant already has filed an answer by that time.

To the extent that § 47a-26b (d) applies to these facts, it should be interpreted consistently with the purposes of summary process and the canons of statutory construction. "The purpose of summary process proceedings . . . is to permit the landlord to recover possession on termination of a lease . . . without suffering the delay, loss and expense to which he may be subjected under a common-law action. . . . The process is intended to be summary and is designed to provide an expeditious remedy to the landlord seeking possession." (Citations omitted; internal quotation marks omitted.) *Prevedini* v. *Mobil Oil Corp.*, 164 Conn. 287, 292, 320 A.2d 797 (1973). It would frustrate this purpose to interpret § 47a-26b (d) as allowing judges to render judgments of possession for failure to make a use and occupancy payment when the defendant has already filed an answer. Such an interpretation would punish the defendant for having timely and expeditiously filed his answer and would encourage delayed filing, both of which would defeat the "summary" nature of summary process.

Furthermore, interpreting § 47a-26b (d) as the plaintiff advocates would yield an absurd result. "The canons of statutory construction instruct us to interpret statutes using our common sense to avoid absurd results." *Bengtson* v. *Commissioner of Motor Vehicles*, 86 Conn. App. 51, 60, 859 A.2d 967 (2004), cert. denied, 272 Conn. 922, 867 A.2d 837 (2005). If we interpreted the statute as allowing a judge to render a judgment of possession without a hearing in these circumstances, the class of defendants who timely filed an answer and sought a

hearing before defaulting on use and occupancy payments would be treated the same as those who defaulted and never filed an answer at all. We decline to interpret § 47a-26b (d) as allowing that result without a clear legislative direction that it is required.

The plaintiff nonetheless argues that § 47a-26b (d) does not provide the exclusive remedy for failure to make use and occupancy payments in a summary process action. The plaintiff cites various authorities that empower courts to enforce orders by rendering judgment against recalcitrant parties. See, e.g., Practice Book § 17-19 ("[i]f a party fails to comply with an order of a judicial authority . . . the party may be nonsuited or defaulted by the judicial authority"). Because rendering an adverse judgment ends the action, it is a remedy that should be granted sparingly and judiciously.

Moreover, two cases suggest that § 47a-26b (d) does set forth the exclusive remedy for failure to make use and occupancy payments. In *Messinger* v. *Laudano*, 4 Conn. App. 162, 164–65, 493 A.2d 255, cert. denied, 196 Conn. 182, 495 A.2d 279 (1985), this court affirmed a judgment of possession against defendants who did not make use and occupancy payments in the amount ordered. In so doing, we noted that the defendants' disobedience left the clerk "no alternative" but to order that an answer be filed. Id., 165. In *Groton Townhouse Apts.* v. *Covington*, 38 Conn. Supp. 370, 373, 448 A.2d 221 (1982), the trial court had held the defendants in contempt for failure to make use and occupancy payments. The Appellate Session of the Superior Court concluded that "the contempt remedy was inappropriate" for failure to make use and occupancy payments because § 47a-26b contains "the remedy for noncompliance" with an order to make use and occupancy payments. Id. Although neither case specifically holds that the statute sets forth the exclusive remedy for noncompliance with an order to make use and occupancy payments, each suggests that conclusion by resorting to the statute and by rejecting other remedies. Without a clear legislative mandate to the contrary, we decline to break this pattern.

Finally, we note that, contrary to the plaintiff's suggestion, concluding that § 47a-26b (d) requires a hearing in these circumstances does not ultimately deprive it of a remedy. After a hearing, the court might well conclude that the plaintiff is entitled to a judgment of possession.

Because the defendants already had filed an answer at the time they failed to make use and occupancy payments, they were entitled to a hearing on the merits of the motion for a judgment of possession under § 47a-26b (d). The court erred by not granting one.

The judgment is reversed and the case is remanded for further proceedings.

In this opinion the other judges concurred.

[1] In the summary process complaint, the plaintiff is 136 Field Point Circle Holding Company, LLC, and the defendants are Alexander Razinski, Tanya Razinski, Xenia Razinski, Invar International Holding, Inc., "John Doe(s)," and "Jane Doe(s)." On April 25, 2014, the plaintiff withdrew the case against Xenia Razinski, Invar International Holding, Inc., "John Doe(s)," and "Jane Doe(s)," leaving only Alexander Razinski and Tanya Razinski as the defendants at the time of judgment and on appeal. We refer to Alexander Razinski and Tanya Razinski as the defendants in this opinion. Although we also discuss a New York action filed by the defendants, throughout this opinion we refer to the parties by their roles in the Connecticut litigation.

[2] General Statutes § 47a-26b (d) provides: "If the defendant fails to make [use and occupancy] payments as ordered, the clerk shall, immediately and without the filing of a motion, order the defendant to file his answer and, if the defendant fails to do so within four days of the mailing of such order, judgment shall forthwith be entered for the plaintiff. If the defendant files an answer within such four-day period, the clerk shall set such matter down for hearing not less than three nor more than seven days after such answer and reply, if any, are filed."

[3] The New York court did not rule on the applicability of the forum selection clause or the choice of law clause in the Master Agreement.

[4] This order tracks the language of § 47a-26b (d); see footnote 2 of this opinion; which we discuss in part II of this opinion.

[5] Contrary to the defendants' suggestion, however, the mere fact that the New York judgment is on appeal does not, by itself, bar the application of res judicata because it does not vacate the judgment. See, e.g., *Saunders* v. *Saunders*, 140 Conn. 140, 146, 98 A.2d 815 (1953) ("[a]n appeal does not vacate a judgment; it serves only to stay the enforcement of the rights acquired by the successful litigant"). To discern the effect of an appeal from a New York judgment on the underlying judgment, we must look to New York law. See *Nowell* v. *Nowell*, 157 Conn. 470, 475, 254 A.2d 889, cert. denied, 396 U.S. 844, 90 S. Ct. 68, 24 L. Ed. 2d 94 (1969). In New York, a pending appeal from a judgment does not affect the operation of res judicata. See, e.g., *Plaza PH2001 LLC* v. *Plaza Residential Owner LP*, 98 App. Div. 3d 89, 98, 947 N.Y.S.2d 498 (2012); *Matter of Amica Mutual Ins. Co.*, 85 App. Div. 2d 727, 728, 445 N.Y.S.2d 820 (1981).

[6] That § 47a-26b (d) does not specifically prescribe what courts should do in this precise procedural posture does not necessarily mean, as the plaintiff argues, that the relevant provision is inapplicable. The statute still sets forth a remedy for failure to make use and occupancy payments; the omission of directions for this exact procedural posture therefore makes the question before us one of how, and not whether, to apply the statute.